(No. 70374.—

THERESA BOCHANTIN *et al.*, Appellees, v. DENNIS
PETROFF *et al.* (Dennis Petroff, Appellant).

*Opinion filed September 19, 1991.—Rehearing
denied December 2, 1991.*

HEIPLE and CUNNINGHAM, JJ., took no part.

MILLER, C.J., dissenting.

Ray Freeark and Ransom P. Wuller, of Freeark, Harvey, Mendillo, Dennis & Wuller, P.C., of Belleville, and Heyl, Royster, Voelker & Allen, of Peoria (Gary M. Peplow and Karen L. Kendall, of counsel), for appellant.

Dunham, Boman & Leskera, of East St. Louis (Edward L. Adelman, of counsel), for appellees.

Saul J. Morse, Barbara B. Collins, and Elizabeth W. Anderson, of Morse, Giganti & Appleton, of Springfield, for *amicus curiae* Illinois State Medical Society.

JUSTICE CLARK delivered the opinion of the court:

The issue in the instant case is whether the trial court abused its discretion in granting appellees' motion for a voluntary dismissal (Ill. Rev. Stat. 1987, ch. 110, par. 2—1009) when a motion for involuntary dismissal (Ill. Rev. Stat. 1987, ch. 110, par. 2—619) was pending before the court. We hold that it did not.

On July 27, 1984, appellees Theresa and Matthew Bochantin filed a medical malpractice action in the Madison County circuit court. Appellees named Dr. Petroff and Illinois Health Facilities, Inc., d/b/a Oliver Anderson Hospital, as defendants in the action. The hospital was subsequently dismissed from the action upon appellees' motion and is not a party to this appeal.

The record reveals that throughout the early history of the litigation, appellant filed numerous discovery motions with the trial court in an effort to have appellees comply with the applicable discovery rules. These included a motion to compel answers to interrogatories, a motion for pretrial conference seeking court supervision of discovery, a motion to set discovery deposition of appellees' expert and, finally, a motion to dismiss the action. On October 24, 1986, the trial court granted the appellant's motion to dismiss.

However, on November 10, appellees filed a motion for the trial court to reinstate the action, which motion was granted on November 21. Appellant filed another motion to dismiss on January 23, 1987, arguing that appellees' continuing failure to comply with discovery was

a violation of this court's Rule 219(c) (134 Ill. 2d R. 219(c)). In its order, the trial court conceded that there had been "substantial delay" by appellees, but denied the motion because compliance was completed prior to the hearing and because the matter was not yet set for trial. Thereafter, appellant attempted to set the discovery deposition of one of appellees' experts but appellees failed to produce the expert for this or any subsequently scheduled depositions. Appellant filed another motion for a pretrial conference, and in its ruling on the motion on March 31, the trial court ordered the expert produced for deposition within 45 days. Trial was also set for November 1988, in the court's order.

The appellees failed to produce the experts by the court-imposed deadline; therefore, on October 17, appellant filed a third motion to dismiss with the trial court. At a hearing on appellant's motion on January 3, 1989, appellees told the court that the expert had not been produced because his employer requested that he not testify in the matter. Appellees indicated to the court that they became aware of their expert's withdrawal from the case in November 1988. The court gave appellees 30 days to replace their expert and to identify the new expert to appellant. The order did not include a ruling on appellant's motion.

On January 19, prior to the expiration of the court's deadline, the court entered an order granting appellees 30 additional days to obtain and disclose their expert. On February 3, appellant filed a motion to strike the court's January 19 order, but before arguments were heard on appellant's motion, appellees sought and were granted a voluntary dismissal without prejudice. The appellate court affirmed the order of the trial court. (198 Ill. App. 3d 369.) Thereafter, this court granted appellant's petition for leave to appeal (134 Ill. 2d R. 315). The Illinois

State Medical Society filed briefs as *amicus curiae* in the matter in support of appellant's position.

In this court appellant argues that the trial court should have considered the October 17, 1988, motion to dismiss before ruling on appellees' motion for voluntary dismissal. Appellant believes that the extent of this court's opinion in *Gibellina v. Handley* (1989), 127 Ill. 2d 122, includes the requirement that a trial court consider pending defense motions to dismiss before a section 2—1009 motion where the record reveals a history of procedural and discovery violations. Alternatively, appellant argues that the trial court's ruling on appellees' motion was an abuse of discretion.

In *Gibellina v. Handley*, this court stated that a trial court "may hear and decide a motion which has been filed *prior to* a section 2—1009 motion when that motion, if favorably ruled on by the court, could result in a final disposition of the case." (Emphasis in original.) (*Gibellina*, 127 Ill. 2d at 137-38.) The *Gibellina* opinion represented a significant change in a plaintiff's absolute right to voluntarily dismiss his action without prejudice prior to trial. Prior to *Gibellina*, this right was considered absolute in all but limited circumstances. In *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 283, this court held that if a plaintiff files a motion to voluntarily dismiss and then refiles pursuant to section 13—217 in response to a Rule 103(b) motion filed by the defendant, "the Rule 103(b) motion *must* be heard on its merits prior to a ruling on plaintiff's motion to dismiss under section 2—1009." (Emphasis added.)

This court's decisions in both *O'Connell* and *Gibellina* were grounded in our constitutional authority to regulate and manage the courts. (*Gibellina*, 127 Ill. 2d at 137; *O'Connell*, 112 Ill. 2d at 281.) Despite this clear mandate, however, only in *O'Connell* did the court clearly restrict the plaintiff's rights under section 2—1009 and

hold that a trial court "must" consider a pending Rule 103(b) motion. The opinion in that matter was based on the conflict between the legislatively enacted Code of Civil Procedure and this court's rules. " '[W]here a rule of this court on a matter within the court's authority and a statute on the same subject conflict, *the rule will prevail.*' (Emphasis added.) [Citations.]" (*O'Connell*, 112 Ill. 2d at 281.) There was no comparable conflict in *Gibellina*. Rather, that opinion, necessitated by the "abusive use of the voluntary dismissal statute" (*Gibellina*, 127 Ill. 2d at 138; see *O'Connell*, 112 Ill. 2d at 281-82), clearly left within the trial court the discretion to consider the previously filed, potentially dispositive motion.

Appellant argues before this court that the proper interpretation of this court's opinion in *Gibellina* is that a trial court *must* consider the previously filed motion *when the record reveals a history of procedural and discovery abuses by the plaintiff.* Appellant is incorrect in his interpretation of the extent of the *Gibellina* holding. What appellant proposes is revision of the *Gibellina* rule to require determination of the defense motion rather than making the court's authority to do so discretionary. (198 Ill. App. 3d at 374.) As the opinion below observed, "[w]hile we acknowledge [appellant's] concerns, we decline to adopt this proposed interpretation because it would further limit plaintiff[s'] statutory right of voluntary dismissal and because [this court] intended to afford discretion to the court, not a mandate." (198 Ill. App. 3d at 374.) The appellate court's interpretation of *Gibellina* is correct.

Application of the rationale underlying the *Gibellina* opinion has not been limited to a civil context. In *People v. Woolsey* (1990), 139 Ill. 2d 157, the trial court allowed the State to enter a *nolle prosequi* where the defendant had two motions pending before the court, one of which was a motion to dismiss for violation of the speedy-trial

act. (*Woolsey*, 139 Ill. 2d at 165.) The defendant challenged the State's dismissal of his indictment through a *nolle prosequi*, arguing, *inter alia*, that the trial court erred in failing to conduct a hearing on his motion for discharge before allowing the State to enter a *nolle prosequi*. (*Woolsey*, 139 Ill. 2d at 161.) This court concluded, *inter alia*, that "[i]n the interests of judicial economy and fairness to the defendant, the trial court should have disposed of the defendant's speedy-trial motion before allowing the State to nol-pros the indictment." *Woolsey*, 139 Ill. 2d at 170.

In reaching its conclusion in *Woolsey*, this court observed that it was guided by its decision in *Gibellina*, where this court held that where there is a potentially dispositive defense motion before the court, "the trial court *should* consider and decide that motion before allowing the motion to voluntarily dismiss an action." (Emphasis added.) *Woolsey*, 139 Ill. 2d at 170.

Contrary to this court's statement in *Woolsey*, which we recognize as merely *dicta*, we emphasize herein that the *Gibellina* opinion left within the discretion of the trial court the decision to consider a potentially dispositive defense motion before granting a plaintiff's section 2—1009 motion. Moreover, although the *Woolsey* opinion relied on *Gibellina* for support in reaching its conclusion, the facts of that matter are readily distinguishable from this court's opinion in *Gibellina* as well as the instant case.

Our only other concern then is whether the trial court abused its discretion in choosing not to consider the defense motion. The trial court's decision will not be reversed unless there was an abuse of discretion. The standard of review on appeal is whether the trial court's ruling was a reasonable exercise of sound discretion. (*Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90, 95.) As we observed above, appellees told the trial

court during arguments on appellant's October 17, 1988, motion to dismiss that they had only recently been informed of their expert's withdrawal from the case. Granted, this delay on the part of appellees was another in a case replete with postponements and extensions that succeeded in freezing the litigation at the discovery stage. However, the trial court was familiar with the history of the litigation when it ruled on the appellees' motion to voluntarily dismiss the action. We cannot conclude that the trial court's decision to grant appellees additional time to prepare their case for trial rather than dismiss the action was not a reasonable exercise of sound discretion. Accordingly, we hold that the trial court's decision to do so was not an abuse of discretion.

For the foregoing reasons, we affirm the judgment of the appellate court.

*Judgment affirmed.*

JUSTICES HEIPLE and CUNNINGHAM took no part in the consideration or decision of this case.

CHIEF JUSTICE MILLER, dissenting:

The trial judge in the present case granted the plaintiffs' request for voluntary dismissal of their action without first considering a pending and potentially dispositive defense motion for involuntary dismissal. I do not agree with the majority's conclusion that the trial judge's ruling may now be sustained on the ground that it did not constitute an abuse of discretion. Accordingly, I dissent.

A brief review of the 4½-year history of this litigation in the circuit court will demonstrate the merits of the defendant's position. The plaintiffs filed the present medical malpractice action in 1984. In October 1986, the trial judge dismissed the suit because the plaintiffs had failed to disclose the identity of any expert witness. The

action was later reinstated when the plaintiffs submitted the names of two expert witnesses. In January 1987, the defendant filed a second motion for dismissal of the action, contending that the plaintiffs had failed to respond to supplemental requests for production and supplemental interrogatories propounded some six months earlier. The plaintiffs submitted answers to the discovery requests at a subsequent hearing, and the trial judge then denied the dismissal motion, though he noted that the plaintiffs had been responsible for substantial delay in the proceedings.

In October 1988, the defendant filed a third motion for dismissal, this time on the ground that the plaintiffs had failed to set the discovery deposition of Dr. Allan J. Jacobs, one of the expert witnesses previously identified by the plaintiffs. In November 1988, the plaintiffs learned that Dr. Jacobs' employer would not permit him to appear as a witness in the present case. Following a hearing on January 3, 1989, the trial court entered an order granting the plaintiffs 30 days in which to disclose the identity of a new expert witness. The order also declared that no further extensions would be allowed.

On January 19, 1989, the trial court granted the plaintiffs an additional 30 days' time in which to name a new expert witness. Apparently there had been no request by the plaintiffs for a further extension of time, however, and on February 3 the defendant filed a motion to strike the latest order and to reinstate the previously imposed deadline. On February 15, 1989, the plaintiffs filed a motion for voluntary dismissal of their action pursuant to section 2—1009 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1009). The trial judge granted the plaintiffs' request on February 23, 1989.

In *Gibellina v. Handley* (1989), 127 Ill. 2d 122, this court held that "the trial court may hear and decide a

motion which has been filed *prior to* a section 2—1009 motion when that motion, if favorably ruled on by the court, could result in a final disposition of the case." (Emphasis in original.) (*Gibellina*, 127 Ill. 2d at 138.) The holding was applicable to all potentially dispositive defense motions, and not just to those grounded in a specific rule of this court (see *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273). The novelty of *Gibellina* is indicated by its purely prospective operation: the court declined to apply the new holding even to the cases consolidated in that appeal, electing instead to limit the effect of the decision to trial court proceedings conducted on or after February 22, 1989, the date on which the opinion was filed.

Applying *Gibellina* to the present case, the majority concludes that the trial judge did not abuse his discretion in granting the plaintiffs' request for voluntary dismissal without first considering the defendant's prior motion. In support of this conclusion, the majority opinion notes that the trial judge was aware of the history of the litigation when he granted the plaintiffs' motion. In my view, the majority's holding is subject to two major defects.

First, it is not at all clear that the trial judge realized that he had any discretion to exercise; the trial judge might have believed instead that he was compelled to grant the plaintiffs' request for voluntary dismissal, as he would have been required to do prior to *Gibellina*. Nothing in the record indicates what circumstances, if any, were considered by the trial judge in allowing the plaintiffs' request for dismissal. The record on appeal does not contain a transcript of the February 23 hearing, and the order entered that day stated only that the motion was being allowed, without specifying any reasons for that ruling.

Though applicable to the present action, *Gibellina* apparently was not considered by the court or the parties during the hearing on the plaintiffs' request for voluntary dismissal. Indeed, it seems that *Gibellina* was first brought to the court's attention in the defendant's subsequent motion for reconsideration; the wording of the motion suggests that, at the time of the February 23 hearing, the trial judge and the parties were not aware of the decision in that case, which had been filed only the previous day.

Second, even if we are to assume that the trial judge and the parties believed that the present case was governed by *Gibellina*, I do not agree with the majority's conclusion that granting the plaintiffs' request for voluntary dismissal was not an abuse of discretion. In deferring to the lower court's ruling, the majority merely cites the trial judge's familiarity with the course of the present litigation. That circumstance will be present in virtually every case, however, and I do not believe that our reliance on it can afford adequate guidance concerning proper practice under section 2—1009. Discussing the growing abuse of the voluntary dismissal statute, this court noted in *Gibellina* that "an ever increasing number of plaintiffs are using a section 2—1009 motion to avoid a potential decision on the 'merits' or to avoid an adverse ruling as opposed to using it to correct a procedural or technical defect. [Citations.]" (*Gibellina*, 127 Ill. 2d at 137.) The consequences of that abuse are readily apparent. As this court explained, "It has become clear that the allowance of an unrestricted right to dismiss and refile an action in the face of a potentially dispositive motion is not only increasing the burden on the already crowded dockets of our courts, but is also infringing on the authority of the judiciary to discharge its duties fairly and expeditiously." *Gibellina*, 127 Ill. 2d at 137.

The case at bar illustrates well the frequent abuse of the voluntary dismissal statute and the resulting burdens that are being imposed on litigants and courts in this State. In requesting dismissal of their action under section 2—1009, the present plaintiffs were not seeking to correct a mere procedural or technical defect in the proceedings but instead were attempting to avoid an adverse ruling on the defendant's pending motion. This is the type of problem highlighted in *Gibellina*. Short of adopting a bright-line rule that would in every case require a trial judge to consider the merits of a potentially dispositive defense motion that has been filed prior to a plaintiff's request for voluntary dismissal, this court should provide meaningful standards by which the priority of those competing motions may be readily determined. The majority's decision in the present appeal can only lead to confusion among bench and bar regarding proper practice under section 2—1009.

Justice Frankfurter's observation is apt here: "Litigation is the pursuit of practical ends, not a game of chess." (*City of Indianapolis v. Chase National Bank* (1941), 314 U.S. 63, 69, 86 L. Ed. 47, 50, 62 S. Ct. 15, 17.) Faced both with crowded dockets and with diverse demands on scarce resources, the judicial system should be curbing, rather than encouraging, dilatory trial tactics. Today's decision simply holds in check the eventual resolution of this much-delayed action and deprives practitioners and the lower courts of any guidance with respect to these recurring problems.