FRED CRAWFORD, Plaintiff-Appellee, v. ANTHONY SCHAEFFER, Defendant-Appellant.

First District (2nd Division)   No. 1—90—1408

Opinion filed February 18, 1992.—Rehearing denied March 25, 1992.

McCORMICK, J., specially concurring.

Wildman, Harrold, Allen & Dixon, of Chicago (Helaine W. Heydemann, Ruth E. VanDemark, and Robert M. Collins, of counsel), for appellant.

Michael W. Rathsack, of Chicago (Louis S. Goldstein and Cindy G. Flux-gold, of counsel), for appellee.

JUSTICE DiVITO delivered the opinion of the court:

The issue we address in this case is whether the circuit court had discretion to consider defendant's summary judgment motion prior to addressing plaintiff's motion to voluntarily dismiss his complaint, pur-

suant to section 2—1009 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1009). For reasons that follow, we vacate the court's order of dismissal, granted because the court concluded it had no discretion to deny it, and remand for a hearing to determine whether plaintiff complied with all the requirements of the voluntary dismissal statute.

In January 1984, plaintiff Fred Crawford filed a medical malpractice claim against defendant Anthony Schaeffer and Northwestern Memorial Hospital. Beginning in March 1984, the parties sought to have experts identified. In August 1986, after no expert had been identified, the circuit court ordered plaintiff to identify his expert within two months and defendants to do so by March 1987. Ten months later, no one having complied, the circuit court entered an order barring each side from presenting expert witnesses. The court later vacated the order and gave plaintiff until November 1987 and defendants until March 1988 to identify experts. Toward the end of 1987, the hospital moved for summary judgment. In an agreed order, the court dismissed the hospital voluntarily without prejudice.

In May 1988, defendant Schaeffer again asked plaintiff to identify his expert. Receiving no response by July, defendant moved for summary judgment or, alternatively, to extend discovery. Plaintiff identified his expert the next day. One day later, the court ruled on defendant's motion, extending discovery into 1989. In March 1989, the court granted defendant's motion to extend discovery yet again. In November 1989, defendant moved for sanctions because plaintiff had not presented his expert for deposition. The court ordered that the deposition occur by January 15, 1990.

Plaintiff finally presented his expert for deposition on February 1, 1990, approximately four weeks before the trial date. The expert could not say within a reasonable degree of certainty that plaintiff's injury had been caused by defendant's deviation from the applicable standard of care. Defendant ordered a transcript of the deposition, and on Tuesday, February 13, 1990, he filed a motion for summary judgment, attaching the transcript as support, and served it on plaintiff. Unbeknownst to defendant, however, plaintiff had filed a motion for voluntary dismissal on Friday, February 9, at 4:27 p.m., one court day earlier.[1] On February 13, plaintiff served defendant with notice of the motion and its February 15 hearing date.

---

[1] Due to a three-day holiday weekend, the court had been closed on February 12.

At the February 15, 1991 hearing, the circuit court reluctantly granted plaintiff's motion, believing that it had no discretion to do otherwise because plaintiff had filed first, citing *Gibellina v. Handley* (1989), 127 Ill. 2d 122, 535 N.E.2d 858. Defendant moved for reconsideration, but the court denied the motion. It stated that the *Gibellina* exception to a plaintiff's virtually absolute right to nonsuit did not apply because plaintiff's prior-filed motion could not be viewed as an attempt to avoid defendant's later-filed potentially dispositive motion.

At common law, a plaintiff had the right to voluntarily dismiss with impunity at any time before the moment a trial court entered its ruling or a jury's verdict. (*Gibellina v. Handley* (1989), 127 Ill. 2d 122, 132, 535 N.E.2d 858, 863.) The Illinois legislature modified this right by statute in the Practice Act of 1907 and in the Civil Practice Act of 1933. (For history and commentary, see 4 R. Michael, *Illinois Practice* §42.2, at 340 (1989); see also Ferrini & Winter, *Voluntary Dismissals—From Shield to Sword by the Convergence of Improvident Actions*, 21 J. Mar. L. Rev. 549, 549-52 (1988); Johnston, *The Voluntary Dismissal in Illinois—A Sword or a Shield?*, 21 J. Mar. L. Rev. 537 (1988); Comment, *The Vanishing Right of a Plaintiff to Voluntarily Dismiss His Action*, 9 J. Mar. J. Prac. & Proc. 853, 854-57 (1976).) Now, under section 2—1009 of the Code of Civil Procedure:

> "The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1009(a).)

As recently as 1984, our supreme court, deferring to the legislature, refused to interpret this language as allowing any infringement on the unfettered common law right to nonsuit. *Kahle v. John Deere Co.* (1984), 104 Ill. 2d 302, 308, 472 N.E.2d 787, 789.

Judicial erosion of the right to voluntarily dismiss commenced, however, with *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 492 N.E.2d 1322. There, a conflict arose between the voluntary dismissal statute and Supreme Court Rule 103(b) (87 Ill. 2d R. 103(b)), which concerns dismissal for failure to exercise due diligence in service of process. Our supreme court held that where a statute conflicts with a rule of the supreme court in such a way that the statute unduly infringes upon the judiciary's constitutional duty and authority to administer the courts, the rule will control. (*O'Connell*, 112 Ill. 2d at 282-83, 492 N.E.2d at 1326.) Subsequently, in *Gibellina*, the supreme

court held that "the trial court may hear and decide a motion which has been filed *prior to* a section 2—1009 motion when that motion, if favorably ruled on by the court, could result in a final disposition of the case." (Emphasis in original.) (*Gibellina*, 127 Ill. 2d at 138, 535 N.E.2d at 866.) The court acknowledged that it was announcing a "clear departure from prior precedent," but it found an alarming increase in abusive invocation of the voluntary dismissal statute to avoid adverse rulings or decisions on the merits, noting that this abuse of the unlimited right to nonsuit and refile had begun to "infring[e] on the authority of the judiciary to discharge its duties." *Gibellina*, 127 Ill. 2d at 137, 535 N.E.2d at 866.

More recently, in *Fumarolo v. Chicago Board of Education* (1990), 142 Ill. 2d 54, 566 N.E.2d 1283, the supreme court held that under certain circumstances, even a later-filed dispositive defense motion could preclude nonsuit. There, the defendant filed for summary judgment after the plaintiff filed for nonsuit. Nevertheless, because the defendant had informed both the plaintiff and the court at an earlier hearing that he soon would file his motion, the supreme court viewed the defense motion as "before the court" on the day the plaintiff filed for nonsuit. This posture, the court ruled, triggered application of *Gibellina* and allowed the circuit court to exercise its discretion to deny the plaintiff's motion. In its most recent interpretation of *Gibellina*, the Illinois Supreme Court clarified that the circuit court may, but need not, consider a defendant's potentially dispositive motion prior to granting a plaintiff's section 2—1009 motion, thereby resolving the uncertainty created by *dicta* in *People v. Woolsey* (1990), 139 Ill. 2d 157, 170, 564 N.E.2d 764, 769, that a circuit court "should" consider such defense motions before addressing a motion for nonsuit. *Bochantin v. Petroff* (1991), 145 Ill. 2d 1, 6-7, 582 N.E.2d 114, 117.

Here, defendant urges us to hold that the circuit court erred in believing that it had no choice but to grant plaintiff's motion. *Gibellina*, he argues, permits a court to consider a potentially dispositive defense motion, even if filed after a section 2—1009 motion, so long as the defense motion is pending when the nonsuit motion is heard. Because motions remain alive for at least 90 days even if not set for hearing (Circuit Court of Cook County, Rule 2.3), he raises the specter of a flood of secret " 'prophylactic' nonsuits" filed every 90 days to ensure that the plaintiff always prevails. To allow consideration of his motion, he contends, would merely balance the rights of the parties: a plaintiff would retain the right to move for dismissal, but the courts could scrutinize the motion for abuse if a defendant has filed a dispositive motion. To rule otherwise, he warns, would reward a flagrant

abuse of the voluntary dismissal statute, contrary to the intent of *Gibellina,* and would "create an arbitrary rule applying only to motions technically filed prior to [the filing of] a plaintiff's [section] 2—1009 motion," contrary to our supreme court's recent application of *Gibellina* in *Fumarolo.* He asks this court to vacate the circuit court's order and either to grant him summary judgment or, alternatively, to remand with a ruling that the circuit court may consider his motion if it finds that plaintiff's motion is an abuse of the voluntary dismissal statute.

Plaintiff responds that the circuit court was required to grant his motion because the narrow category of exceptions found in *Gibellina* is inapplicable here. This is a race to the courthouse, he argues, which he won by filing first. He describes *Gibellina* as "indisputedly clear" on this point, remarking that at the February 15 hearing, defense counsel himself acknowledged that filing dates are determinative. Reversal, he asserts, would be tantamount to overturning *Gibellina's* rejection of the Federal rule (Fed. R. Civ. P. 41(a)), under which a plaintiff's absolute right to nonsuit automatically terminates upon service of an answer or a summary judgment motion. If *Gibellina* found that a plaintiff should not have an unfettered right to block a dispositive defense motion, he contends, the same logic mandates that such defense motions may not be used to thwart a plaintiff's right to dismiss. Defendant rejoins that plaintiff's view is "overly simplistic" and that plaintiff's reading of *Gibellina* is too technical and narrow.

Both parties' arguments miss the mark. Defendant's balancing test rests on the unsupported propositions that he has a "right" to have his summary judgment motion heard and that plaintiffs are entitled only to move for nonsuit, not to have the order entered almost automatically. In addition, defendant's dire warnings about secret "prophylactic" motions lack substance. He neglects to mention that a plaintiff must notify other parties within three court days that a motion is filed (Circuit Court of Cook County R. 2.1(d)) and that Supreme Court Rule 184 allows a defendant himself to set a plaintiff's filed motion for hearing (134 Ill. 2d R. 184), thereby forcing a plaintiff either to withdraw the motion or to squander the sole opportunity to nonsuit and refile (*Flesner v. Youngs Development Co.* (1991), 145 Ill. 2d 252, 254, 582 N.E.2d 720, 721; *Gibellina,* 127 Ill. 2d at 134, 535 N.E.2d at 864).

Plaintiff's arguments fare no better. His contention that reversal here would be equivalent to an embrace of the Federal rule is groundless. Under the Federal rule (Fed. R. Civ. P. 41(a)), a plaintiff loses his right to dismiss as soon as a defendant serves a summary judgment

motion or an answer, the latter event usually occurring shortly after a complaint is filed. It is absurd to equate early, automatic termination of the unfettered right to dismiss with allowing, but not requiring, a court to deny a nonsuit motion after six years of dilatory pretrial maneuvering. Too, plaintiff's analogy between a section 2—1009 motion and a summary judgment motion ignores a crucial distinction between the two: the former, unlike the latter, allows refiling and thus does not result in final disposition. *People v. Woolsey* (1990), 139 Ill. 2d 157, 163, 564 N.E.2d 764, 766 (likening *nolle prosequi* to nonsuit, neither of which constitutes a final disposition).

The real question here is whether plaintiff's "race to the courthouse" metaphor is apt. We believe not. As our supreme court noted in *Fumarolo*, to view filing dates alone as determinative is "too formalistic and rigid." Instead, the critical inquiry is whether a defendant "put[s] a potentially dispositive motion before the court prior to the filing of the section 2—1009 motion." (*Fumarolo*, 142 Ill. 2d at 68, 566 N.E.2d at 1289.) In this case, because neither the circuit court nor plaintiff was aware of defendant's intention to file his motion for summary judgment, that motion could not be said to have been "before the court" on February 9, 1990. Even so, however, the circuit court might have erred in believing it had no choice but to grant plaintiff's motion. To qualify for the right to voluntary dismissal under section 2—1009, a plaintiff must do more than file.

On this point, our recent opinion in *Vaughn v. Northwestern Memorial Hospital* (1991), 210 Ill. App. 3d 253, 569 N.E.2d 77, *appeal denied* (1991), 139 Ill. 2d 605, 575 N.E.2d 924, is instructive. There, we held that noncompliance with even one of the three requirements of section 2—1009 will cause a plaintiff to lose his right to voluntarily dismiss. (210 Ill. App. 3d at 257, 569 N.E.2d at 79.) In *Vaughn*, at a hearing on the defendants' motion to dismiss, the plaintiff presented a section 2—1009 motion with no prior notice to the defendants. The circuit court granted the defendants' motion. We affirmed because the plaintiff had violated the notice requirement of section 2—1009 by not complying with the notice provision of the local rules. The same question arises here.

Under the rules of the circuit court of Cook County, applicable here, a moving party must serve all other parties with notice of the filing of a motion within three court days of the date on which the motion is filed. (Circuit Court of Cook County R. 2.1(d).) In addition, for all but emergency or *ex parte* motions, the moving party must serve the other parties with notice of hearing either personally by 4 p.m. no later than two court days in advance of the hearing or, alter-

natively, by mail posted at least five court days prior to the hearing. (Circuit Court of Cook County R. 2.1(d).) In the case of a section 2—1009 motion, strict compliance with these requirements is preferred, contrary to the holding in *Metcalfe v. St. Elizabeth's Hospital* (1987), 160 Ill. App. 3d 47, 513 N.E.2d 12, which we expressly rejected in *Vaughn* (210 Ill. App. 3d at 258, 569 N.E.2d at 80).

Here, the record reveals that on February 9, plaintiff filed his motion and obtained a February 15 hearing date, and that sometime on February 13, the following court day, he personally served defendant with notice of the motion and of its hearing date. Because plaintiff filed his motion only three court days prior to the hearing date, of course, he could not have mailed the notice of hearing at least five court days before the hearing date. As a result, plaintiff could not have complied with the posting requirements of Rule 2.1(c). This finding does not end our inquiry, however, because plaintiff might have complied with the personal service requirement of Rule 2.1(c), given that the notice of hearing states that plaintiff personally served defendant with the notice on February 13, two court days prior to the February 15 hearing date. Although defendant's counsel stated at the hearing that he filed his motion on February 13 without knowledge of plaintiff's motion, this lack of knowledge is irrelevant when determining whether plaintiff effected personal service within the meaning of the rule prior to 4 p.m. If, for example, plaintiff left his notice with the receptionist at defense counsel's office, plaintiff complied with Rule 2.1(c). The record, however, discloses no conclusive information as to whether defendant was personally served prior to 4 p.m. that day. Accordingly, we are unable to determine whether plaintiff complied with the notice requirement of the local rules, which we consider an integral part of section 2—1009. Moreover, nothing in the record indicates that plaintiff paid, or even tendered, defendant's costs prior to entry of the order, as section 2—1009 also requires. Without this information, the circuit court could not know whether it had no choice but to grant plaintiff's motion. Accordingly, we must vacate the court's order and remand for an evidentiary hearing on these questions. If plaintiff cannot prove compliance with the notice and payment requirements of section 2—1009, he abdicated his absolute right to dismiss, and the court may exercise its discretion to consider defendant's motion. If plaintiff did comply, the circuit court will have no choice but to grant the motion.

We recognize that under current case law the right to nonsuit is virtually unassailable. Accordingly, we hesitate to impose any restrictions, no matter how warranted by circumstances and policy, absent

guidance from the legislature or the supreme court. Like the *Gibellina* court, however, we are troubled by the prospect of giving our tacit approval to plaintiff's egregious abuse of the voluntary dismissal statute. The record before us leaves little doubt that the catalyst for plaintiff's motion was his realization that after six years, he could not unearth a single expert who would support his claim of negligence. Affirmance here would require that we ignore the mandate, from both the legislature (Ill. Rev. Stat. 1989, ch. 110, par. 1—106) and the supreme court (134 Ill. 2d R. 2), to focus on ending controversies according to the substantive rights of the parties. This we decline to do.

Judgment vacated and remanded.

HARTMAN, P.J., concurs.

JUSTICE McCORMICK, specially concurring:
The majority, in its insightful opinion, has taken every conceivable caution to sustain plaintiff's right to pursue his cause of action. The highly touted level playing field has been graded level, smoothed and is now a sheet of ice. The plaintiff, like a skilled skater taking advantage of the absence of friction, has travelled a great distance by the exertion of a minimal force. By the mere filing of a lawsuit, plaintiff has glided through our legal system for six years. During this trek, plaintiff has failed to produce the expert witness that is necessary to establish a *prima facie* case. Should the circuit court find that the requirements of section 2—1009 have been met, plaintiff will be in a position to commence his second six-year sojourn through our legal system. Enough is enough. Absurd and unjust results such as this should not be allowed to continue.

In 1984, the Illinois Supreme Court suggested that the legislature take steps to amend section 2—1009 to prevent abuses of this kind. (*Kahle v. John Deere Co.* (1984), 104 Ill. 2d 302, 472 N.E.2d 787.) I strongly urge the legislature to heed the supreme court's suggestion and to act promptly to prevent further abuses of this kind.