631 N.E.2d 1302 (1994)
259 Ill. App.3d 231
197 Ill.Dec. 843
In re AIR CRASH DISASTER AT SIOUX CITY, IOWA ON JULY 19, 1989. (Joseph Trombello, et al., Plaintiffs-Appellees, v. United Airlines, Inc., et al., Defendants-Appellants).
No. 1-93-0241.
Appellate Court of Illinois, First District, Second Division.
March 29, 1994.
*1304 Adler, Kaplan & Begy, Chicago (John Adler, Michael McQuillen and Richard Walker, of counsel), for United Airlines defendant-appellant.
Sidley & Austin, Chicago (H. Blair White, Charles Douglas, Sara Gourley, Lory Barsdate and Sheila Sundvall, of counsel), for General Elec. Co. defendant-appellant.
Rothschild, Barry & Myers, Chicago (Norman Barry and Daniel Cummings, of counsel), Bryan Cave, Los Angeles (Steven Hogan, of counsel), for McDonnell Douglas Corporation, defendant-appellant.
Gardere & Wynne, L.L.P., Dallas, TX, Martin Rose, Fred Meier and Cynthia Hollingsworth, John Scott Hoff, Chicago, for RMI Titanium Co. defendant-appellant.
Merlo, Chapello & Douglas, Ltd., Chicago (Alan Brinkmeier and Elizabeth Caprini, of counsel), for Titanium Metals Corp. defendant-appellant.
Pope, Ballard, Shepard & Fowle, Ltd., Chicago (Edmund Sinnott and Michael West, of counsel), for Aluminum Co. of America defendant-appellant.
Corboy & Demetrio, P.C., Chicago (Philip Corboy, Robert Clifford and David Novoselsky, of counsel), for plaintiffs-appellees.
Justice HARTMAN delivered the opinion of the court:
Defendants appeal from a final order granting plaintiffs' motion for voluntary dismissal of twenty-three consolidated cases arising from the crash of United Airlines Flight 232 (Flight 232) at Sioux City, Iowa, on July 19, 1989. The issues raised here are whether (1) the circuit court erred in granting plaintiffs' motion for voluntary dismissal; (2) the voluntary dismissal statute as applied here violated constitutional separation of *1305 powers provisions; (3) plaintiffs are estopped from seeking or have waived their right to seek voluntary dismissal; and (4) the circuit court erred in refusing to exercise its discretion to hear and decide summary judgment motions.
The Flight 232 plane crash generated numerous lawsuits in over 36 state and federal jurisdictions. The federal cases were consolidated in the Northern District of Illinois. The Cook County complaints were consolidated before the presiding judge of the law division of the circuit court of Cook County who, on March 23, 1990, coordinated all discovery with the federal actions pursuant to the parties' agreement. A written order, entered May 21, 1991, adopted federal discovery deadlines, but permitted exceptions for good cause. Thereafter, the matter was assigned to the present court.
On February 4, 1992, after the deadlines had expired, plaintiffs' motion to reopen discovery was denied, the circuit court finding that plaintiffs had failed to show good cause. During the hearing, the court suggested that the parties meet and seek a compromise on additional discovery, so that the cases docketed in the "89 L" series could proceed on track; otherwise, discovery with respect to oral testimony would not be reopened.
On February 11, 1992, the parties reported to the court that they were unable to agree to further discovery. Although the court questioned whether it could modify an agreed discovery schedule, it did order certain limited additional discovery. On April 7, 1992, plaintiffs filed another motion to open discovery. At the hearing on this motion, the circuit court, although acknowledging that discovery was closed, stated it would permit additional discovery upon a showing of good cause. Over the next nine months, the court presided over a number of hearings pertaining to discovery and motion matters, ultimately granted plaintiffs some additional discovery, and set a March 15, 1993 trial date.
On November 20, 1992, plaintiffs filed a motion to voluntarily dismiss all pending cases. At the hearing on the motion, the court urged the parties to compromise stating:
"[W]hile I agree with a lot of the defendants' equitable arguments, that the law, not the equities, favors the plaintiffs. * * * [H]owever, * * * it might be wise that you people sit down and see if there is a way that we can avoid the 2-1009 problem, because as I indicated with my opening remarks, that there is no question in my mind that this motion has been filed to avoid discovery deadlines and cut-offs, but there is a middle ground."
On January 12, 1993, the parties again met with the court and disclosed that they were unable to agree to additional discovery. The arguments of the parties were noted, including the fact that two defendants had motions for summary judgment pending that had been filed prior to plaintiffs' motion to dismiss. In granting plaintiffs' motion, the court stated that, "[w]ere it within my power to not grant the motion, my tendency would be to not grant the motion; but based on the law, as it exists in the state of Illinois, pursuant to Gibellina and its progeny, I feel that I must grant the motion." Defendants appeal, raising the points first noted.

I.
Defendants contend that the circuit court erred in granting plaintiffs' motion for voluntary dismissal because it was operating under the erroneous belief that it lacked discretion to deny the motion, which, defendants argue, the court must have when a voluntary dismissal motion constitutes an egregious abuse of the judicial system. Given the complexity of this mass tort case as well as the parties' agreement concerning discovery scheduling, defendants ask this court to carve out an exception to plaintiffs' right to nonsuit in order to prevent discovery abuse.
At common law, plaintiff was permitted to take a nonsuit any time prior to entry of a decision by the judge or the jury. (Gibellina v. Handley (1989), 127 Ill.2d 122, 132, 129 Ill.Dec. 93, 535 N.E.2d 858 (Gibellina).) The Illinois Legislature modified this right by statute so that section 5/2-1009 of the Civil Practice Law provides, in part, as follows: *1306 "Voluntary dismissal, (a) The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause." 735 ILCS 5/2-1009(a) (West 1992) (formerly Ill.Rev.Stat.1991, ch. 110, par. 2-1009(a)).
Recently, our supreme court placed certain limitations on plaintiff's right to nonsuit and, while doing so, held that where a statute conflicts with a rule of the supreme court in such a way that the statute unduly infringes upon the court's constitutional authority to regulate the judicial system, the rule will control. (O'Connell v. St. Francis Hospital (1986), 112 Ill.2d 273, 281, 97 Ill.Dec. 449, 492 N.E.2d 1322 (O'Connell).) Later, the supreme court held that the circuit court "may hear and decide a motion which has been filed prior to a section 2-1009[ (a) ] motion when that motion, if favorably ruled on by the court, could result in a final disposition of the case." (Gibellina, 127 Ill.2d at 138, 129 Ill.Dec. 93, 535 N.E.2d 858.) Essentially the same Gibellina language was codified into law by the legislature (Pub. Act 88-157, eff. January 1, 1994 (amending 735 ILCS 5/2-1009 (West 1992) (formerly Ill.Rev.Stat.1991, ch. 110, par. 2-1009))). See also Fumarolo v. Chicago Board of Education (1990), 142 Ill.2d 54, 153 Ill.Dec. 177, 566 N.E.2d 1283 (holding that under certain circumstances, even a later filed dispositive defense motion could preclude nonsuit).
We have held recently that, other than these limited exceptions, under current case law the right to nonsuit cannot be challenged. (Crawford v. Schaeffer (1992), 226 Ill.App.3d 129, 135, 168 Ill.Dec. 860, 590 N.E.2d 497.) We also have stated that we would "hesitate to impose any restrictions, no matter how warranted by circumstances and policy, absent guidance from the legislature or the supreme court." Crawford, 226 Ill.App.3d at 135-36, 168 Ill.Dec. 860, 590 N.E.2d 497.
In the case sub judice, the circuit court acknowledged that plaintiffs' motion for voluntary dismissal arose "out of a discovery problem" and had "been filed to avoid discovery deadlines and cut-offs." Defendants raise valid concerns about the potentially abusive motives underlying plaintiffs' motion to dismiss; however, discovery abuse has not been identified by the legislature or supreme court as a basis for eliminating or restricting the right to nonsuit. (See Gibellina (court granted discretion to hear a previously filed, potentially dispositive defense motion); O'Connell (lack of diligence in service of process on defendants); Bochantin v. Petroff (1991), 145 Ill.2d 1, 163 Ill.Dec. 848, 582 N.E.2d 114 (Bochantin) (refusal to extend Gibellina to require the circuit court to hear a previously filed defense motion notwithstanding a history of procedural and discovery abuses by plaintiff); Mizell v. Passo (1992), 147 Ill.2d 420, 168 Ill.Dec. 812, 590 N.E.2d 449 (plaintiff's delay in obtaining a certificate required by section 2-622 of the Code of Civil Procedure); Galowich v. Beech Aircraft Corp. (1982), 92 Ill.2d 157, 65 Ill. Dec. 405, 441 N.E.2d 318 (refusal to assess defendants' deposition costs against a plaintiff who voluntarily dismisses since litigants must bear their own litigation and trial-preparation expenses).) Defendants' contention that this court should carve out a further exception to eliminate abuse of discovery is beyond precedent.
An argument analogous to that raised by defendants here was rejected by the supreme court in Gibellina There, appellants asked the court to correct an abusive situation where voluntary dismissal motions were being used to evade the consequences of a failure to comply with discovery rules. (Gibellina, 127 Ill.2d at 134, 129 Ill.Dec. 93, 535 N.E.2d 858.) The court, however, noted the existence of a panoply of other available remedies for discovery abuse, such as Supreme Court Rule 219(c) (107 Ill.2d R. 219(c)), and refused to strip plaintiffs of a statutory right. The court stated that it would "not accept appellants' invitation to unequivocally alter a statutory protection merely to remedy the perceived reticence of the trial court to manage and control litigation as tightly as a defendant might like." (Gibellina, 127 Ill.2d at 135, 129 Ill.Dec. 93, 535 N.E.2d 858.) Similarly, the supreme court in Bochantin refused to direct the circuit court to hear and *1307 decide a potentially dispositive motion prior to considering plaintiff's voluntary dismissal motion despite a history of discovery abuses by plaintiff. 145 Ill.2d at 3-7, 163 Ill.Dec. 848, 582 N.E.2d 114.
Given the patently unique situation presented by the sheer number of these consolidated cases sub judice, the history of concerns presented by precedential authority set forth in previous paragraphs, and the supreme court's implicit rejection of defendants' contention as considered in Gibellina and Bochantin, any further restriction of the right to voluntary dismissal pertaining to abuse of discovery must come from the legislature. As to all defendants except two, the latter being considered under point IV of this opinion, the circuit court did not err in granting plaintiffs' motion for voluntary dismissal.

II.
Defendants next argue that section 2-1009 as interpreted by the circuit court violates the separation-of-powers provisions of the Illinois Constitution (Ill. Const.1970, art. VI, § 1, art. II, § 1) by allowing the legislature to enact rules that interfere with the court's authority to supervise discovery and control its docket.
The separation-of-powers clause of our constitution provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const.1970, art. II, § 1.) This provision does not contemplate rigidly separated compartments, however. (People v. Joseph (1986), 113 Ill.2d 36, 41, 99 Ill.Dec. 120, 495 N.E.2d 501.) The general assembly has the power to enact laws governing judicial practice which do not unduly infringe upon the inherent powers of the judiciary, set forth in Article VI, section 1. (Strukoff v. Strukoff (1979), 76 Ill.2d 53, 59, 27 Ill.Dec. 762, 389 N.E.2d 1170.) The mere presence of concurrent jurisdiction and authority to promulgate procedural rules does not necessitate a tug-of-war between the legislature and the court to determine whose views should predominate. (Gibellina, 127 Ill.2d at 133, 129 Ill.Dec. 93, 535 N.E.2d 858.) In addition, a strong presumption of constitutionality attaches to any legislative enactment. Sanelli v. Glenview State Bank (1985), 108 Ill.2d 1, 20, 90 Ill.Dec. 908, 483 N.E.2d 226.
Defendants rely on O'Connell to support their contention that section 2-1009 is unconstitutional as applied. In O'Connell, plaintiff filed a medical malpractice complaint and defendants moved to dismiss pursuant to Supreme Court Rule 103(b), citing plaintiff's lack of diligence in serving process. (O'Connell, 112 Ill.2d at 276-77, 97 Ill.Dec. 449, 492 N.E.2d 1322.) Plaintiff then voluntarily dismissed the case under section 2-1009. (O'Connell, 112 Ill.2d at 277, 97 Ill.Dec. 449, 492 N.E.2d 1322.) On review, the supreme court held that section 2-1009's mandatory language infringed upon the court's constitutional authority to regulate the judicial system because it was in direct conflict with a mandatory supreme court rule. O'Connell, 112 Ill.2d at 281, 97 Ill.Dec. 449, 492 N.E.2d 1322. See also Lafin v. Allstate Insurance Co. (1988), 168 Ill.App.3d 1075, 119 Ill.Dec. 638, 523 N.E.2d 106 (Lafin).
The present case does not involve a conflict between section 2-1009 and a specific rule of the supreme court. Defendants maintain nevertheless that the O'Connell reasoning should be applied here because the voluntary dismissal statute is being utilized by plaintiffs to circumvent the court's supervision of discovery. In an analogous case, Lafin, plaintiff's motion for voluntary dismissal was granted after defendant had moved to dismiss for failure to comply with discovery. (Lafin, 168 Ill.App.3d at 1076, 119 Ill.Dec. 638, 523 N.E.2d 106.) On appeal, defendant, relying on O'Connell, argued that the court's interest in prompt resolution of pending litigation would not be served if plaintiff was permitted to circumvent discovery rules by voluntarily dismissing the case. (Lafin, 168 Ill.App.3d at 1077, 119 Ill.Dec. 638, 523 N.E.2d 106.) Specifically, the Lafin defendant argued that Supreme Court Rule 219(c) (107 Ill.2d R. 219(c)) governing sanctions for failure to comply with discovery, conflicted with sections 2-1009 and 13-217. (Lafin, 168 Ill.App.3d at 1077, 119 Ill.Dec. 638, 523 N.E.2d 106.) The Lafin court distinguished O'Connell, however, finding that section 2-1009 did not conflict with Rule 219(c) because *1308 the court's authority to impose discovery sanctions was optional and held that section 2-1009 did not unduly infringe upon the supreme court's constitutional rulemaking authority since the circuit court is vested with discretion in supervising discovery. Lafin, 168 Ill.App.3d at 1078, 119 Ill.Dec. 638, 523 N.E.2d 106.
Although the case at bar does not involve a conflict with a specific supreme court rule, the reasoning in Lafin is persuasive here. Since the circuit court has been vested with discretion in supervising discovery, use of section 2-1009 neither conflicts with nor infringes upon the supreme court's constitutional authority to manage the judiciary. As the supreme court noted, "[a] general sense of unease with the particular results under the dismissal statute is not necessarily the same as an infringement on our supervisory authority." Gibellina, 127 Ill.2d at 133, 129 Ill.Dec. 93, 535 N.E.2d 858.
Similarly, in Gibellina, the supreme court rejected the argument that application of the voluntary dismissal statute unconstitutionally infringes on the judicial authority to manage the courts. Instead, as noted above, the court pointed out that any abuse of discovery through use of section 2-1009 motions could be cured by utilizing other remedies already available to the courts (Gibellina, 127 Ill.2d at 134-35, 129 Ill.Dec. 93, 535 N.E.2d 858) and refused to alter a statutory protection merely because one party was dissatisfied with the circuit court's supervision of the litigation. (Gibellina, 127 Ill.2d at 135, 129 Ill.Dec. 93, 535 N.E.2d 858.) Therefore, both Lafin and Gibellina rejected constitutional challenges to section 2-1009 as applied to abuse of discovery.
Accordingly, defendant's constitutional challenge fails since the voluntary dismissal statute as applied here by the circuit court does not conflict with nor impinge upon the supervisory authority of the supreme court.

III.
Defendants assert that plaintiffs are estopped from seeking or have waived their right to seek voluntary dismissal based on an "unequivocal" statement to the court that they would not dismiss this case and start over with discovery. Defendants raise four arguments in support of their contention.

A.
Defendants first contend that plaintiffs are judicially estopped from seeking voluntary dismissal.
The judicial estoppel doctrine provides that a party who adopts a particular position in a legal proceeding is estopped from assuming a contrary position in a subsequent legal proceeding. (Department of Transportation v. Coe (1983), 112 Ill.App.3d 506, 509, 68 Ill.Dec. 58, 445 N.E.2d 506.) The doctrine is designed to protect the integrity of the courts; therefore, the analysis focuses upon the relationship between the litigants and the court rather than upon inter-litigant relationships. For this reason, proof of reliance by the opposing party is not an element of the doctrine. (In the Matter of Cassidy (7th Cir.1990), 892 F.2d 637, 641-42, cert, denied (1990), 498 U.S. 812, Ill S.Ct. 48, 112 L.Ed.2d 24.) The doctrine applies only when the following elements are established: (1) two positions have been taken by the same party; (2) the positions were taken in separate judicial or quasi-judicial administrative proceedings; (3) the record clearly reflects that the party intended the trier of fact to accept the truth of the party's position; (4) the party was successful in asserting the first position and received some benefit in the first proceeding; and (5) the two positions are totally inconsistent. Galena Park Home v. Krughoff (1989), 183 Ill.App.3d 206, 208, 131 Ill.Dec. 810, 538 N.E.2d 1366.
The basis for defendants' assertion of "unequivocalness" here is the following colloquy between plaintiffs' lead counsel and the court:
"MR. CORBOY: What I am suggesting is that there is good cause for additional discovery here. There are many ways, 1 and I don't mean to suggest I would even contemplate doing this. But we know that there is a statute that gives people an opportunity to takedismiss their case and start all over. That would be a horrible *1309 thing to do in this case. I am not suggesting that anyone would do it.
* * * * * *
THE COURT: I am suggesting that you are going in the right direction, and I am suggesting that the Plaintiffs have stated in open court today that if this discovery issue is not resolved, or they are going to, I assume, be true to their word and voluntarily dismiss and re-file these cases
MR. CORBOY: No, sir, I didn't say that.
THE COURT: All right. That's real easy. The motion to reopen discovery is denied. What else do we have?"
The doctrine of judicial estoppel is inapplicable here since the record fails to demonstrate that plaintiffs received a benefit as a result of counsel's comment. Following Corboy's observations, the court ruled against plaintiffs by denying their motion to reopen discovery. Subsequent additional discovery allowed by the court was granted upon a showing of good cause and not because of the representation at issue. Accordingly, plaintiffs are not judicially estopped from seeking voluntary dismissal.

B.
Defendants assert that plaintiffs are equitably estopped from seeking voluntary dismissal, by virtue of the same "unequivocal" remark to the circuit court that they would not voluntarily dismiss their cases and start over with discovery.
In Vaughn v. Speaker (1988), 126 Ill.2d 150, 127 Ill.Dec. 803, 533 N.E.2d 885, the supreme court set forth the following six elements of equitable estoppel: (1) there must be words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts; (2) the party against whom the estoppel is alleged must have had knowledge at the time the representations were made that the representations were untrue; (3) the truth respecting the representations so made must be unknown to the party claiming the benefit of the estoppel at the time that the representations were made and at the time that they were acted on by him; (4) the party estopped must intend or reasonably expect that his conduct or representations will be acted upon by the party asserting the estoppel or the public generally; (5) the party claiming the benefit of the estoppel must have in good faith relied upon the misrepresentation to his detriment; and (6) the party claiming estoppel would be prejudiced if the party to be estopped is permitted to deny the misrepresentation. Vaughn, 126 Ill.2d at 162-63, 127 Ill.Dec. 803, 533 N.E.2d 885.
In the instant case, neither the circuit court nor defendants detrimentally relied on counsel's statement. Plaintiffs' counsel made the comment at issue during argument over an unsuccessful motion to reopen discovery. The circuit court did not rely on this representation since it immediately denied the motion. Again, subsequent discovery ordered by the court was based on a showing of good cause and was not linked to counsel's statement. Moreover, defendants, as the parties seeking estoppel, did not rely on the representation: they did not respond to the statement at the time it was made and they continued to contest additional discovery throughout the proceedings.
Defendants urge that they will have incurred enormous expenses in briefing issues, working to complete damages discovery and otherwise preparing for trial, thereby wasting financial and other resources should the circuit court dismissal order be allowed to stand. Although it is apparent in multi-party litigation such as this that considerable costs in time, effort and money have already been expended by all parties, it is not so clear at this juncture that all such expenditures necessarily will have been wasted, nor that all inexorably may be uncompensated. See Galowich v. Beech Aircraft Corp. (1982), 92 Ill.2d 157, 65 Ill.Dec. 405, 441 N.E.2d 318.
In consideration of all the circumstances presented by this case, we cannot say that plaintiffs should be equitably estopped from seeking voluntary dismissal.

C.
Defendants argue that plaintiffs expressly and impliedly waived their right to seek voluntary dismissal due to the same "unequivocal" *1310 statement made by plaintiff's lead counsel to the court.
Waiver is a voluntary relinquishment of a known right, claim or privilege. (Vaughn v. Speaker (1988), 126 Ill.2d 150, 161, 127 Ill.Dec. 803, 533 N.E.2d 885.) Unlike equitable estoppel, waiver does not necessarily imply that the party asserting it has been misled to his detriment. (Vaughn, 126 Ill.2d at 161-62, 127 Ill.Dec. 803, 533 N.E.2d 885.) Waiver may be express or implied, and may arise from acts, words or conduct of the one waiving the right. (Sexton v. Smith (1986), 112 Ill.2d 187, 194, 97 Ill.Dec. 411, 492 N.E.2d 1284.) A plaintiff may waive the right to voluntary dismissal. (Pingrey v. Rulon (1910), 246 Ill. 109, 92 N.E. 592.) Finally, waiver is an equitable doctrine invoked to further the interests of justice. Geier v. Hamer Enterprises, Inc. (1992), 226 Ill.App.3d 372, 390, 168 Ill.Dec. 311, 589 N.E.2d 711.
In the case sub judice, counsel's comment to the court does not appear to have been the "unequivocal," voluntary relinquishment or "renunciation" of plaintiffs' statutory right to nonsuit that defendants insist upon; it was certainly not the relinquishment of a right for the court's promise of desired action. Rather, the discussion gives the appearance of an unremarkable dialogue between court and counsel.
A thorough review of the record also reveals that the equitable considerations are so closely balanced between the parties that the circuit court found both sides responsible for the "sordid history" of the case. Given this balance, as well as the fact that the truthseeking function of discovery would be restricted by application of defendants' proposed doctrine, we find no waiver.

D.
Defendants' final contention in this regard is that the circuit court misapplied the law of waiver and estoppel.
In ruling on defendants' waiver and estoppel arguments, the circuit court erroneously stated:
"In regard to the statements made by Mr. Corboy, there is nothing before me that indicates that there was an agreement made wherein the defendants, pursuant to that agreement, was a meeting of the minds concerning Mr. Corboy's statements; and, therefore, there is no waiver or estoppel."
As the preceding discussion of the governing law illustrates, and as defendants correctly argue, neither waiver nor estoppel require an "agreement" or "meeting of the minds" (e.g. Pantle v. Industrial Comm'n (1975), 61 Ill.2d 365, 372, 335 N.E.2d 491). The circuit court's misstatement of the law was without prejudice to defendants, however, and we find no reversible error.

IV.
Defendants Titanium Metals Corporation (Titanium) and RMI Titanium Company (RMI) argue that the circuit court erred in refusing to exercise its discretion to hear their summary judgment motions filed prior to plaintiffs' motion for voluntary dismissal. According to these defendants, the summary judgment motions would have been dispositive of the entire case involving them. Plaintiffs counter that the court's refusal to hear the summary judgment motions was a proper interpretation of the law since the motions would not have disposed of the entire litigation as to all the parties.
Prior to November 20, 1992, when plaintiffs filed their motion for voluntary dismissal, Titanium and RMI had filed separate motions for summary judgment. In ruling on plaintiffs' motion for voluntary dismissal, the circuit court stated:
"Based upon the record in front of me, I do have certain motions for summary judgment, but unfortunately, and I use the term `unfortunately' advisedly, none of them will result in a final disposition of the case.
* * * * * *
I am aware that there is more than one defendant; however, not only as I read Gibellina, but what the Supreme Court has said, including that paragraph is, therefore, the Court today announces effective *1311 as of the date of filing of this opinion and perspectively [sic ] only, the trial Court may hear and decide a motion which has been filed prior to a 2-1009 motion when that motion is favorably ruled upon by the Court could, and I quote, `could result in a final disposition of the case.' The language is not `could result in a final disposition of the case as to defendant A or defendant B,' and I interpret this as meaning exactly what it says, a final disposition of the case. For those reasons, I will stand on my ruling."
At issue, then, is an interpretation of the supreme court's language in Gibellina, 127 Ill.2d at 138, 129 Ill.Dec. 93, 535 N.E.2d 858:
"[T]he trial court may hear and decide a motion which has been filed prior to a section 2-1009 motion when that motion, if favorably ruled on by the court, could result in a final disposition of the case." (Emphasis added.)
(See also Pub. Act 88-157, eff. January 1, 1994, essentially codifying the foregoing language by amending 735 ILCS 5/2-1009 (West 1992) (formerly Ill.Rev.Stat. 1991, ch. 110, par. 2-1009.)) Gibellina modified previous construction of the voluntary dismissal statute because an increasing number of plaintiffs were using the statute to avoid potentially dispositive motion decisions in their cases. (Mizell v. Passo (1992), 147 Ill.2d 420, 168 Ill.Dec. 812, 590 N.E.2d 449.) The circuit court was authorized to exercise its discretion in deciding whether to hear a previously filed dispositive motion in order to strike a balance between a plaintiff's right to voluntarily dismiss and the abuse that right engendered from some plaintiffs. (Mizell, 147 Ill.2d at 425, 168 Ill.Dec. 812, 590 N.E.2d 449.) Gibellina, however, never indicated what motions were potentially dispositive, but left that decision to the discretion of the circuit court. (Mizell, 147 Ill.2d at 425, 168 Ill.Dec. 812, 590 N.E.2d 449.) When the circuit court refuses to exercise discretion in the erroneous belief that it has no discretion as to the question presented, the court commits error. (People v. Queen (1974), 56 Ill.2d 560, 565, 310 N.E.2d 166.) In the instant case, the circuit court erred by concluding that it had no discretion to hear and decide these summary judgment motions unless they disposed of the rights of each and every party involved in the controversy. Contrary to the circuit court's ruling, we do not read Gibellina as holding that a court has discretion to hear a dispositive motion under these circumstances only when the decision on the motion would affect all parties and claims.
The foregoing is brought into sharp focus when the supreme court rules relating to what constitutes a final disposition of a case are consulted. Under Rule 301, an appeal may be taken only from an order that is final. (134 Ill.2d R. 301.) To be considered final, a circuit court's order must dispose of the rights of the parties' entire controversy. (Peter Fischer Import Motors, Inc. v. Buckley (1984), 121 Ill.App.3d 906, 909, 77 Ill.Dec. 290, 460 N.E.2d 346.) When, as here, multiple parties and claims are involved, Rule 304(a) permits the appeal of a final judgment as to one or more, but fewer than all the parties or claims, where the circuit court makes an express written finding that there is no just reason for delay or enforcement of the judgment. (134 Ill.2d R. 304(a).) Rule 304 clearly anticipates that in cases involving multiple litigants, summary judgment motions may be granted to fewer than all the parties, from which appeals may be taken in appropriate situations. (Noland v. Steiner (1991), 213 Ill.App.3d 611, 157 Ill.Dec. 702, 572 N.E.2d 1166.) Accordingly, by permitting an appeal under these circumstances, the rule recognizes that a "final disposition of the case" may be made as to fewer than all the parties or claims.[1] Here, the circuit court committed reversible error when it refused to exercise its discretion to hear the Titanium and RMI summary judgment motions under the erroneous belief that it lacked authority to consider them at that stage of the litigation.
*1312 Accordingly, as to defendants Titanium and RMI only, we reverse on this point and remand with directions to the circuit court to exercise its discretion in considering the summary judgment motions still pending.
Affirmed in part; reversed and remanded in part.
SCARIANO and McCORMICK, JJ., concur.
NOTES
[1] Although the denial of a summary judgment motion is not ordinarily appealable, even where Rule 304(a) language has been inserted in the order (Deerfield Management Co. v. Ohio Farmers Ins. Co. (1988), 174 Ill.App.3d 837, 124 Ill.Dec. 423, 529 N.E.2d 243), the issue presented under this point is whether the circuit court properly declined to consider the motions for summary judgment on their merits under the supposition that it had no discretion to do so.