(Nos. 65781, 66010, 66197 cons.—

MICHAEL GIBELLINA, Appellee, v. GEORGE HANDLEY *et al.*, Appellants.—JOSEPH SCHMITT *et al.*, Appellees, v. MOTOROLA COMMUNICATIONS AND ELECTRONICS, INC., *et al.* (Motorola Communications and Electronics, Inc., Appellant).—DAVID WARE, Appellee, v. CENTRAL DuPAGE HOSPITAL *et al.*, Appellants.

*Opinion filed February 22, 1989.*

CALVO, J., took no part.

Wildman, Harrold, Allen & Dixon, of Wheaton (Lenard C. Swanson and Bruce S. Terlep, of counsel), for appellants George Handley and Harb Boury.

Johnson, Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan, Donald N. Hoppe and Nancy Tordai O'Shaughnessy, of counsel), for appellants Mark Heymann *et al.*

Lord, Bissell & Brook, of Chicago (Hugh C. Griffin, Jeffry S. Spears and Diane I. Jennings, of counsel), for appellant Central DuPage Hospital.

Daniel J. Rice, of Forest Park, for appellee.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini and Richard R. Winter, of counsel), for *amicus curiae* Illinois Association of De-

fense Trial Counsel.

Johnson, Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellant.

Carr & O'Rourke Associates, of Chicago (Donald A. Carr and Robert R. Dlugajczyk, of counsel), for appellees.

James T. Newman, of Robert J. Cooney & Associates, of Chicago, and Kathy Byrne, law student, for *amicus curiae* Illinois Trial Lawyers Association.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini and Richard R. Winter, of counsel), for *amicus curiae* Illinois Association of Defense Trial Counsel.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (David P. Meyer, Stephen R. Swofford and Adam S. Kreuzer, of counsel), for appellant Gerald A. Jabaay.

Thomas J. McDonnell, of Chicago, for appellee.

JUSTICE CLARK delivered the opinion of the court:

At issue in each of these cases is an interpretation of the scope and extent of the right extended to a plaintiff by the voluntary dismissal statute in the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—

1009). The cases are similar in these respects: In each case the appellant filed a pretrial motion for summary judgment and in each case the appellee subsequently filed a motion for voluntary dismissal before any decision had been entered on appellants' motion for summary judgment. Each trial court granted the motion for summary judgment and denied the appellees' motion for voluntary dismissal. The appellate court reversed in each instance, holding that, because the trial courts did not have the discretion to hear the appellants' motions in advance of appellees' motions for voluntary dismissal, they therefore erred in denying the motions for voluntary dismissal. (*Gibellina*, 158 Ill. App. 3d 866; *Schmitt*, 160 Ill. App. 3d 1059; *Ware*, 161 Ill. App. 3d 1160 (unpublished order under Supreme Court Rule 23).) Appellants' petitions for leave to appeal were each granted (107 Ill. 2d R. 315) and these cases were consolidated; *Gibellina* and *Schmitt* were consolidated before oral argument while *Ware* was added following oral argument before this court. The Illinois Association of Defense Trial Counsel was granted leave to file an *amicus curiae* brief in support of appellants' position and the Illinois Trial Lawyers Association was similarly granted leave to file an *amicus curiae* brief on behalf of appellees' position. While, for the reasons stated herein, we today affirm the decisions of the appellate court, we announce a prospective change, elaborated below, which is initiated to curb the current abuses of the voluntary dismissal statute.

Because each case presents a somewhat different procedural history, and because appellants assert that change in the law is required because of the extensive abuse of the statutory right, the procedural background of each case will be presented before a discussion of the scope and extent of the rights embodied in the voluntary dismissal statute.

Gibellina v. Handley, No. 65781, is a medical malpractice action first initiated in the Cook County circuit court in early 1983. Appellee filed a complaint which alleged that surgery had been negligently performed at Central DuPage Hospital in Du Page County in March 1981. Nineteen defendants were named in the suit; 18 of the defendants resided in Du Page County and one resided in Cook County. In July 1985 the case was transferred to the circuit court of Du Page County, where a status hearing was held on December 30, 1985. At the status hearing the court set a pretrial conference for July 11, 1986, with trial to commence on August 11, 1986. During the early months of 1986, appellants, the defendants in the court below, filed various interrogatories and requests for identification of the appellee's expert witnesses. Failing a full response to the interrogatories and requests, on May 5, 1986, the court ordered that appellee respond to all outstanding discovery requests by May 19, 1986. Appellee, however, indicated that he had not as yet selected an expert witness. Appellants then filed additional requests during May and June, to which appellee did not respond. During the pretrial conference on July 11, 1986, the appellee was still not prepared to name an expert witness; on appellants' motion the trial court therefore barred appellee from presenting expert witnesses at the trial pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220). Following this ruling barring testimony from expert witnesses, appellants individually filed affidavits and motions for summary judgment. On August 4, 1986, the appellee filed a motion to vacate the July 11 order barring expert witnesses, asserting that more time was needed to complete discovery prior to naming experts. The court denied the motion to vacate, but did order that the deposition of one of the appellants be completed by August 8, 1986, the date on which the court had scheduled a hearing on the summary judgment motions. In the interim, appellee filed a section

2—1009 motion (Ill. Rev. Stat. 1985, ch. 110, par. 2—1009) for voluntary dismissal and scheduled arguments on the motion for August 7. Appellants objected to the section 2—1009 motion, asserting that their previously filed and potentially dispositive motions for summary judgment took precedence. Based on our decision in *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, the trial court denied appellee's motion pending a hearing on the appellants' motions for summary judgment. Because appellee would be barred from presenting expert witness testimony at the trial to establish a deviation from the medical standard of care, the trial court granted summary judgment for the appellants. Appellee appealed from the orders barring expert testimony, denying the motion for voluntary dismissal and granting the motion for summary judgment. The appellate court reversed the trial court's denial of the motion for voluntary dismissal and did not address the remaining issues. 158 Ill. App. 3d 866.

Schmitt v. Motorola Communications and Electronics, Inc., No. 66010, is a products liability case first filed on June 15, 1979, against three parties: Motorola, Inc., Motorola Communications and Electronics, Inc., and Industrial Electronics Service Corporation. The complaint alleged that communications equipment purchased on June 21, 1977, had generated excessive amounts of electromagnetic radiation which caused loss of hair, loss of hearing, headaches, sporadic blurred vision, muscle spasms and pain. Approximately three years later, on April 17, 1982, one of the named defendants, Motorola, Inc., filed a counterclaim against appellees based on their failure to pay for the communications equipment. A few days later, on April 22, 1982, Motorola, Inc., also requested that the court regulate discovery. Although appellees had previously responded to interrogatories by naming 11 individuals as their expert witnesses, it appears from the record that they had merely named nationally known authorities on

radio wave emissions and had never personally contacted these authorities to serve as experts for this litigation. At the April 22 hearing, appellees were ordered to disclose their experts on or before July 22, 1982. However, 2½ years later, on January 16, 1985, appellants again filed interrogatories pursuant to Supreme Court Rule 220 because appellees had not, as of that date, disclosed experts. Subsequently, one year later, on February 24, 1986, Motorola, Inc., moved to bar appellees from calling any expert witnesses at trial based on their failure to comply with the Rule 220 interrogatories. However, the court again instructed the appellees to name an expert, this time requiring that disclosure be made on or before June 13, 1986. On June 13 the court granted an additional 30-day extension with the stipulation that should appellees fail to disclose experts by that time they would be barred from calling any experts at trial. Appellees failed to disclose expert witnesses as ordered and on October 9, 1986, all appellants moved for summary judgment based on the assertion that appellees would be unable to establish a defect in the products without expert testimony. The motion was set for a briefing schedule and a hearing date; however, before the hearing could be held on the summary judgment motion, the appellees, on November 6, 1986, filed a section 2—1009 motion to voluntarily dismiss the suit. On November 10 the motion for voluntary dismissal was preliminarily denied, again based on *O'Connell*, but subject to a rehearing after briefing by all the parties. On rehearing, held December 18, 1986, the court denied the voluntary dismissal motion and granted appellants' motion for summary judgment. The appellate court affirmed the trial court's denial of the voluntary dismissal as to Motorola, Inc., since Motorola's previously filed counterclaim terminated the absolute right of the plaintiff to voluntarily dismiss, but reversed as to Motorola Communications and Electronics, Inc., and Industrial Electronics Service Com-

pany. It also affirmed the trial court's granting of Motorola, Inc.'s motion for summary judgment but reversed as to Motorola Communications and Industrial Electronics. 160 Ill. App. 3d 1059.

Gibellina and Schmitt raise the following issues in their combined brief: (1) whether there is an absolute right to voluntarily dismiss when there are pending motions for summary judgment; (2) whether the voluntary dismissal statute unduly infringes on the judiciary's constitutional authority to regulate the judicial system; and (3) whether the voluntary dismissal statute is violative of the equal protection clause of the Illinois Constitution by conferring a right to plaintiffs and not to defendants. As discussed below, under current law we must answer the first question in the affirmative and the second and third in the negative. However, with today's decision, the right of a plaintiff to voluntarily dismiss a suit will henceforth be subject to certain further limitations as elaborated below.

The third case in this consolidation, Ware v. Central DuPage Hospital, No. 66197, is another medical malpractice action. The Ware case was filed in the Du Page County circuit court on August 14, 1985, alleging injuries suffered as a result of surgery and care provided in January and May 1984. From the record, it appears that the appellants first served written interrogatories and a production request on appellee on December 4, 1985. This was followed on January 14, 1986, by an official request pursuant to Rule 201(k) (107 Ill. 2d R. 201(k)). Appellee was ordered to comply with discovery by April 21, 1986, which was later extended to May 1, 1986, and was further instructed to disclose his expert by June 1, 1986. On June 23, when appellee had not yet disclosed his expert witness, the appellants filed a motion to bar experts at the trial based on the failure to comply with the court order for disclosure. The motion was granted but vacated one week later on June 30, 1986; the order to vacate granted an ex-

tension to July 21 for the disclosure of experts, and additionally set a date for a status hearing on August 4, 1986. At the August 4 status hearing, the appellants moved for summary judgment based on the appellee's continued refusal to disclose an expert, as that failure now barred appellee from providing expert testimony at the trial. The appellee, at the same hearing, moved for a voluntary dismissal pursuant to section 2—1009. The circuit court granted the appellants' motion for summary judgment and dismissed appellee's motion for voluntary dismissal. Appellee subsequently moved to vacate the August 4 orders, which motion was denied on September 15, 1986. The appellate court reversed. (161 Ill. App. 3d 1160 (unpublished order under Supreme Court Rule 23).) Ware raises the following issues for review: (1) whether the trial court correctly considered the summary judgment motion prior to the voluntary dismissal motion; (2) whether the voluntary dismissal statute is unconstitutionally violative of the separation of powers requirement; and (3) whether the voluntary dismissal statute is permissive rather than mandatory when there is a previously filed motion that will dispose of the case. Again, as discussed below, while we answer these three questions in the negative, prospective changes announced herein will alter future analysis in some cases.

These three cases are representative of the myriad of ways in which plaintiffs have utilized the voluntary dismissal statute, ranging from the potentially abusive to the innocuous. While appellants categorize plaintiffs' conduct in all three cases as unequivocally abusive of the judicial process, on review that contention is not so clear. To briefly summarize the cases, we note that Schmitt v. Motorola, which could be characterized as an egregious example of tactical delay, was first filed in 1979, almost a decade ago, based on complaints about a product bought two years before that. The record indicates sporadic efforts at resolution by defendants as well as plain-

tiffs. One of the original defendants, for example, filed a counterclaim three years after the original complaint was filed and five years after the products were purchased. Gibellina v. Handley represents a less egregious example. That case was initiated in Cook County in 1983 based on alleged medical malpractice which occurred in 1981, but was only transferred to Du Page County in mid-1985. While its first status hearing in Du Page County was held in December 1985, the orders here in dispute were filed in August 1986, less than one year after entering the Du Page County court system. Ware v. Central DuPage Hospital, however, is a less egregious example of a plaintiff's utilization of the voluntary dismissal statute. Ware first filed his complaint in August 1985 in the Du Page County circuit court, well before the expiration of the statute of limitations. Ware's claim was based on alleged medical malpractice occurring in January and May 1984. One year after the appellee first filed the action, the court denied appellee's motion for voluntary dismissal under section 2—1009.

While each appellant phrases the issues presented to this court a little differently, the gist of their argument is that, in any case, once a motion has been filed for summary judgment that motion should be heard prior to a plaintiff's motion for voluntary dismissal.

The voluntary dismissal statute enacted by the legislature clearly grants plaintiffs the following rights:

"The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause. Thereafter the plaintiff may dismiss, only on terms fixed by the court (1) upon filing a stipulation to that effect signed by the defendant, or (2) on motion specifying the ground for dismissal, which shall be supported by affidavit or other proof. After a counterclaim has been pleaded

by a defendant no dismissal may be had as to the defendant except by the defendant's consent." Ill. Rev. Stat. 1985, ch. 110, par. 2—1009(a).

At common law, a plaintiff was permitted to take a nonsuit any time prior to entry of a decision by the judge or the jury. (*Kahle v. John Deere Co.* (1984), 104 Ill. 2d 302, 307; see also Johnston, *The Voluntary Dismissal in Illinois—A Sword or a Shield?* 21 J. Marshall L. Rev. 537 (1988).) While the Illinois statute limits the plaintiff's right as it existed at common law, it does not go as far as the Federal rule—a rule which appellants urge should be applied by our State courts and which is much more favorable to a defendant. The Federal rule permits a plaintiff to take a voluntary dismissal as of right only prior to the filing of an answer or motion by the defendant. (Fed. R. Civ. P. 41(a).) Our State has not adopted the Federal rules, nor are we bound to do so.

We note that the scope of section 2—1009's present limitation as enacted by the legislature was by specific design and not by chance. In 1933, when the legislature was amending the Civil Practice Act, the Senate originally drafted the predecessor to the present statute to permit a plaintiff to dismiss his action as of right no later than the time of defendant's answer or motion attacking the complaint (similar to the Federal rule). (See Comment, *The Vanishing Right of a Plaintiff to Voluntarily Dismiss His Action*, 9 J. Marshall J. Prac. & Proc. 853, 855 n.8 (1976).) However, prior to passage, the House amended the statute to provide that a plaintiff may dismiss his suit without prejudice "any time before trial or hearing begins." (58th Ill. Gen. Assem., House Proceedings, 1933 Session, at 1010; see also 9 J. Marshall J. Prac. & Proc. at 854-56.) As one court noted, "[t]he present wording of the statute, then, is an apparent compromise between two extremes: the view that a plaintiff has an unfettered ability to dismiss his case, and

the view that the inconvenience and expense suffered by a defendant can thwart a plaintiff's right of dismissal." (*In re Marriage of Wright* (1980), 92 Ill. App. 3d 708, 711.) Absent an indication that the statute in question is unconstitutional, this court will not unequivocally alter a clear decision of the legislature on a matter which is within the scope of the legislature's authority by adopting the Federal rule.

Appellants urge that despite the clear intent of the legislature, this court has the authority and power to regulate the plaintiffs' statutory right, both to prevent the grave abuses that occur and because application of the statute unconstitutionally infringes on our inherent judicial authority to manage the courts. Even assuming no direct conflict between the statute and a rule of this court, appellants further support their contention by noting this court's prior recognition of the concurrent jurisdiction of the legislature and this court to promulgate rules of procedure. (See *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 281 (and cases cited therein).) The mere presence of concurrent jurisdiction and authority to promulgate procedural rules, however, does not necessitate our engagement in a tug-of-war with the legislature to determine whose views should predominate. Reasonable persons may differ; a difference of perspective is not enough, however, to warrant this court's involvement in the legislative process.

Clearly, unlike *O'Connell*, which should be read and applied narrowly, this case does not present a situation in which the statutory enactment permitting a voluntary dismissal directly conflicts with a specific rule of this court. A general sense of unease with the particular results under the dismissal statute is not necessarily the same as an infringement on our supervisory authority.

Appellants' concern about the scope of section 2—1009 is obviously magnified by the statutory enactment

in section 13—217, which permits a plaintiff to refile an action within one year of a voluntary dismissal or within the statute of limitations, whichever is greater. (Ill. Rev. Stat. 1985, ch. 110, par. 13—217.) However, our court has recently noted that this right to refile is not limitless and that the statute does not permit more than one such refiling. (*Gendek v. Jehangir* (1988), 119 Ill. 2d 338.) We noted in *Gendek* that "[t]he purpose of section 13—217 \*\*\* is to facilitate the disposition of litigation upon the merits and to avoid its frustration upon grounds that are unrelated to the merits." 119 Ill. 2d at 343.

Similarly, the overall purpose of the Code of Civil Procedure and of the rules of this court is to assure that "controversies may be speedily and finally determined according to the substantive rights of the parties." (Ill. Rev. Stat. 1985, ch. 110, par. 1—106; see also 107 Ill. 2d R. 2.) Although many arguments about alleged abuses center on and highlight the words "speedily and finally," we note that the focus must rather be on establishing the "substantive rights of the parties" within a framework that also encourages a speedy resolution. Speed alone may not be the paramount concern. While a section 2—1009 motion in conjunction with section 13—217 may protect the right of a plaintiff to have a decision in the particular case made on the merits of the claim by potentially permitting "two bites of the apple" when the first bite turns sour, the statutory scheme does not allow a third bite.

Appellants assert that this court must correct an abusive situation because section 2—1009 motions are being used to evade the consequences of a failure to comply with discovery rules. Rather than approach the alleged abuses by utilization of remedies already at the disposal of the court, some of which are discussed below, the appellants would urge this court to strip plaintiffs of a stat-

utorily protected right and to instead follow the Federal rule. This we decline to do.

Defendants are not trapped on an unending treadmill. Should an appellee choose to refile a suit, he has a limited opportunity to do so; additionally, he will not only be required to file a complaint under the current statute (*i.e.*, medical malpractice suits must be filed with proper affidavits and medical expert's report) but will also be required to comply with discovery rules as well as the sanctions available to the court for a continuing failure to comply. While Supreme Court Rule 220 (107 Ill. 2d R. 220) allows the court to bar an expert from testifying, that rule does not encompass the full panoply of available remedies. We note that Rule 219(c) (107 Ill. 2d R. 219(c)) contains other available sanctions—including the ability to dismiss with prejudice. We will not accept appellants' invitation to unequivocally alter a statutory protection merely to remedy the perceived reticence of the trial court to manage and control litigation as tightly as a defendant might like. Should an individual case be refiled pursuant to section 13—217, a diligent defense, using available motions, need not countenance a controversy languishing in the courts for a decade.

Additionally, should a defendant believe that a suit is filed frivolously, that is, filed "without reasonable cause and found to be untrue," sanctions may also be available under sections 2—611 and 2—611.1 (Ill. Rev. Stat. 1985, ch. 110, pars. 2—611, 2—611.1). We note that sanctions available under these enactments may include payment of attorney fees. In other words, defendants are not left, as they may cry, at the mercy of wolves; they do have recourse.

Indeed, defendants have responsive options open to them which may not be available to a plaintiff. Availability of one option, as opposed to another not available, does not automatically render a statute or rule violative of the

equal protection clause. Utilization of the voluntary dismissal statute does not deprive the defendant of an equal protection of the laws, as appellants allege. The limitations within section 2—1009 protect the rights of any litigant—plaintiff, counterclaimant, or third-party plaintiff—to pursue and control a claim for relief. It does not confer a benefit or impose a hardship upon an individual at the expense of others who are similarly situated. Plaintiffs receive no benefits under section 2—1009 that are not also available to other claimants in the lawsuit. Cases cited to the contrary by appellant are not on point.

This court noted in *Kahle* that "it is unfortunate that the defendants have been inconvenienced, [but] that sometimes happens in our adversary system. *** Any further limits on the plaintiff's common law rights should be enacted by the legislature, not declared by this court." (*Kahle*, 104 Ill. 2d at 307-08.) However, this court is not unaware of, nor can it any longer turn its back on, the myriad abusive uses of the voluntary dismissal statute. As we pointed out earlier in this opinion, these three cases are indeed indicative of the scope of utilization of the voluntary dismissal procedure following a defendant's motion for summary judgment. These cases, however, by no means give full evidence of the extreme problem facing our courts today because of such continued utilization of the statute.

Five years ago, our court decided *Kahle v. John Deere Co.* (1984), 104 Ill. 2d 302, a case which is factually distinguishable from the instant case, but in which members of our court noted the abusive utilization of the voluntary dismissal statute and further suggested that the legislature amend the statute to prevent such continued abuse. To date, the legislature has not acted on this suggestion. In an effort to curb the apparent abuses, trial courts have attempted to expand our decision in *O'Connell* to cover situations as presented in the instant cases. As we have

already indicated in this opinion, however, courts of review have generally properly interpreted and applied the narrow scope of *O'Connell.*

This does not end our review and examination, however. A cursory review points out that since 1985 alone the appellate courts have been confronted with over 70 cases dealing with a section 2—1009 dismissal. While it is evident that some of the uses of the statute have not been in conjunction with a defendant's potentially dispositive motion (see, *e.g., Metcalfe v. St. Elizabeth's Hospital* (1987), 160 Ill. App. 3d 47; *Griffin v. Area E—7 Hospital Association* (1987), 158 Ill. App. 3d 720; *Kern v. Peabody Coal Co.* (1987), 151 Ill. App. 3d 807), it is equally apparent that an ever increasing number of plaintiffs are using a section 2—1009 motion to avoid a potential decision on the "merits" or to avoid an adverse ruling as opposed to using it to correct a procedural or technical defect. (See, *e.g., Lawyers Title Insurance Corp. v. Kneller* (1988), 172 Ill. App. 3d 210; *Lafin v. Allstate Insurance Co.* (1988), 168 Ill. App. 3d 1075; *Jacobsen v. Ragsdale* (1987), 160 Ill. App. 3d 656; *Highland v. Stevenson* (1987), 153 Ill. App. 3d 390; *Rohr v. Knaus* (1987), 153 Ill. App. 3d 1013; *Russ v. Gandhy* (1986), 149 Ill. App. 3d 660; *Bailey v. State Farm Fire & Casualty Co.* (1985), 137 Ill. App. 3d 155.) It has become clear that the allowance of an unrestricted right to dismiss and refile an action in the face of a potentially dispositive motion is not only increasing the burden on the already crowded dockets of our courts, but is also infringing on the authority of the judiciary to discharge its duties fairly and expeditiously. Though we decline appellants' invitation to displace the legislative enactment completely by adopting a version of the Federal rule, we do herein assert our authority to manage the courts.

Therefore, the court today announces that, effective as of the date of filing of this opinion and prospectively only,

the trial court may hear and decide a motion which has been filed *prior to* a section 2—1009 motion when that motion, if favorably ruled on by the court, could result in a final disposition of the case. This, of course, does not assure an automatic denial of the section 2—1009 motion, for it is quite possible that the opposing party's prior filed motion is without merit; in that case the subsequent section 2—1009 motion must be granted. This step by our court is necessitated by the noted abusive use of the voluntary dismissal statute.

We decline, however, to penalize the appellees in the cases before us with this clear departure from prior precedent. Unlike *Martinez v. Erickson* (1989), 127 Ill. 2d 112, also filed today, which upheld the retroactivity of *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, the cases in this appeal did not involve an unequivocal conflict between a specific rule of this court and the Code. Under the *O'Connell* line of cases, it cannot be disputed that plaintiffs had already been put on notice of the necessity of notifying potential defendants of the impending suit. Application of *O'Connell* retroactively therefore cannot be construed as an unfair burden on litigants. The same cannot be said for the change announced herein.

Accordingly, the judgments of the appellate court are hereby affirmed. However, effective as of the date of filing of this opinion, litigants are subject to the change announced herein.

*Judgments affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.