FAYE GIBRICK, Plaintiff-Appellee, v. EMANUEL SKOLNIK, Defendant-Appellant.

First District (5th Division)   No. 1—91—2051

Opinion filed September 17, 1993.

Mcnulty, J., specially concurring.
COUSINS, J., dissenting.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Michael A. Pollard, and Michael T. Pfau, of counsel), for appellant.

Williams & Marcus, Ltd., of Chicago (John F. Dziedziak and Michael Fries, of counsel), for appellee.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

NATURE OF ACTION

This is an appeal by the defendant from a voluntary dismissal which the trial court allowed on motion of plaintiff and over objection of the defendant, after trial had commenced. The dismissal was without prejudice, conditioned only upon the payment of costs. Defendant contends that in allowing the voluntary dismissal with leave to reinstate the trial court abused its discretion. Defendant asks that we vacate the order of dismissal without prejudice and enter a new order dismissing the cause with prejudice.

BACKGROUND

Briefly, this appeal arises from a medical malpractice action filed by plaintiff against the defendant doctor, an otolaryngologist. In July of 1981, plaintiff sought defendant's services for treatment of a persistent hoarseness in her voice which the defendant diagnosed as being attributable to a polyp on one of her vocal cords. On August 3, 1981, defendant reexamined plaintiff, reconfirmed his diagnosis and recommended surgery to remove the polyp. On that same date, pursuant to that diagnosis, defendant sent plaintiff to

Skokie Valley Hospital for preadmission testing prior to surgery. This testing included an EKG and chest X ray. Plaintiff charged that the EKG revealed that sometime prior to that date, she suffered a myocardial infarction to the anterior wall of the heart. Plaintiff further charged that the defendant failed to inform her of that finding or to follow up with any additional testing or consultation with a cardiologist.

Apparently the throat surgery proceeded without incident, but two years later, in 1983, plaintiff sustained a second heart attack followed by bypass surgery in 1989. Plaintiff contends that defendant's failure to advise her of the EKG results in 1981 deprived her of an opportunity within the intervening two-year period to take health measures to prevent the second heart attack.

Initially the case was assigned to the trial judge in December 1989 and was set by him for trial April 2, 1990. The trial date was continued from time to time on motion of defendant and on motion of certain other defendants, who were dismissed from this proceeding before trial commenced, resulting in an ultimate trial date of May 20, 1991.

On May 21, 1991, a jury was selected, opening statements were given and two witnesses were presented by the plaintiff, her son Joseph and herself. Plaintiff then called her designated expert, Dr. Richard Herbert. He testified that he was a licensed M.D. in Illinois since 1973, having received his medical degree from the University of Illinois. He further testified that he completed his internship and a two-year residency in internal medicine at Northwestern University. He stated that since late 1976, he had been in the private practice of medicine, his practice being evenly divided between internal medicine (nonsurgical) and family medicine (general practice).

After establishing Dr. Herbert's familiarity with plaintiff's medical records, the following direct examination took place:

"Q. Doctor, are you familiar with the standard of care applicable to a reasonably well qualified ear, nose and throat specialist practicing in the greater metropolitan Chicago area in 1981?

A. Yes, I am.

MR. POLLARD: Objection.

THE COURT: Sustained, the jury is instructed to disregard it.

BY MR. DZIEDZIAK:

Q. Doctor, you have practiced in the Chicago area for how long?

A. About since 1973.

Q. Have you ever had an occasion to consult with an ear, nose and throat physician?

A. Yes, many times.

Q. And, Doctor, after reviewing the medical records that you mentioned, do you have an opinion based upon a reasonable degree of medical and scientific certainty that the medical care rendered by Dr. Skolnik to Faye Gibrick deviated in any way from the standard of care?

MR. POLLARD: Objection, your Honor, lack of foundation."

At that time, defense counsel cited to our decision in *Northern Trust Co. v. Upjohn Co.* (1991), 213 Ill. App. 3d 390, 572 N.E.2d 1030, decided less than 30 days earlier. Plaintiff's counsel requested a recess to study the *Northern Trust* opinion. After court reconvened, plaintiff's counsel asked for a continuance of the trial to permit him to retain another expert in place of Dr. Herbert. When the continuance was refused, plaintiff's counsel asked for a voluntary dismissal without prejudice, stating:

"I think given the timing of this decision and the dictates of Supreme Court Rule 220, the plaintiff had been prejudiced in the regard that we cannot proceed or would prefer not to proceed at this time with our expert and yet because of Rule 220 we cannot substitute an opinion or name a new expert."

Over defendant's objection, the court granted plaintiff's motion for voluntary dismissal without prejudice subject to payment of costs.

It is from that order that this appeal was taken.

OPINION

This appeal tests the factors which the trial court may consider in exercising its discretion to grant a voluntary dismissal after trial has commenced pursuant to section 2—1009 of the Code of Civil Procedure. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1009.) Section 2—1009 provides:

"(a) The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause. Thereafter the plaintiff may dismiss, only on terms fixed by the court (1) upon filing a stipulation to that effect signed by the defend-

ant, or (2) on motion specifying the ground for dismissal, which shall be supported by affidavit or other proof. After a counterclaim has been pleaded by a defendant no dismissal may be had as to the defendant except by the defendant's consent." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1009.) Originally, the Practice Act of 1907 provided that a plaintiff could obtain a voluntary dismissal without prejudice as a matter of right at any time before the jury retired or in the case of a bench trial before the case was submitted for decision. See Ill. Rev. Stat. 1931, ch. 110, par. 70.

This statute was amended in 1932 to its present form under section 2—1009 of the Code and its predecessor, section 52(1) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 52(1)). Under this amendment, a voluntary dismissal without prejudice could still be obtained as a matter of right prior to commencement of trial, but no longer as matter of right thereafter. After commencement of trial, dismissal could only be obtained upon terms fixed by the court in the exercise of its discretion. See *Newlin v. Foresman* (1982), 103 Ill. App. 3d 1038, 432 N.E.2d 319; *Miller v. Bloomberg* (1978), 60 Ill. App. 3d 362, 376 N.E.2d 748. See generally Fleischer, Comment, *The Vanishing Right of a Plaintiff to Voluntarily Dismiss his Action*, 9 J. Marshall J. of Prac. & Proc. 853 (1976).

The purpose of the amendment was to "correct abuses possible under a predecessor statute, which allowed a plaintiff who feared an unfavorable result to voluntarily dismiss the proceedings at any time before the jury retired or, in a bench trial, before the case was submitted for decision." (*Cummings v. Simmons* (1988), 167 Ill. App. 3d 544, 546, 521 N.E.2d 634.) See *Chicago Title & Trust Co. v. County of Cook* (1935), 279 Ill. App. 462, stating:

"The practice under the common law that permitted a plaintiff to take a nonsuit at any time before the decision by walking out of the court room, and the practice under section 70 of the old Practice Act, which permitted plaintiff to take a nonsuit after the case has been heard by the court before it was submitted for final decision, often made the administration of justice a mere travesty. Evidence might be taken in a case for a number of days by both sides. Counsel might then argue at length and if, during the argument, it appeared from what the court had intimated that he was inclined to decide for the defendant, plaintiff had the absolute right to take a nonsuit. It was to remove this obvious defect in the law

that the legislature enacted section 52 of the Civil Practice Act." *Chicago Title & Trust Co.*, 279 Ill. App. at 466.

See generally Ill. Ann. Stat., ch. 110, par. 2—1009, Historial & Practice Notes, at 416-17 (Smith-Hurd 1983).

In exercising its discretion, the trial court may not entertain as its reason for permitting dismissal without prejudice the very considerations which the legislature sought to avert in its statutory amendment. In other words, the trial court should not be free to grant such dismissal where its sole purpose would be to avert an unfavorable decision if the trial were to proceed to its conclusion. Where the announced purpose of the amendment eliminating plaintiff's unfettered rights to dismiss after trial begins is to avert or restrict such escape routes, that purpose may not be condoned by the trial judge in exercising the discretion which was transferred to him by the legislature in its amendment of the rule.

Discretion involves a reasoned balancing between competing interests. (See *People v. Williams* (1992), 149 Ill. 2d 467, 490, 599 N.E.2d 913.) It does not invest the court with arbitrary power. Even where the trial judge's discretion is unconditional, its exercise must ultimately be "guided by the spirit, principles and analogies of the law." See 27 C.J.S. Discretion, at 296-97 (1959).

The right to seek unconditional dismissal without prejudice prior to trial was left relatively unfettered by the 1932 amendment until the Illinois Supreme Court intervened in *Gibellina v. Handley* (1989), 127 Ill. 2d 122, 535 N.E.2d 858. In *Gibellina,* the supreme court asserted its "managerial" authority over the trial courts to require the trial court to defer granting a voluntary motion to dismiss even if made prior to commencement of trial if at that time a dispositive motion such as one seeking summary judgment was pending. (*Gibellina*, 127 Ill. 2d at 137-38.) Even though the act itself (section 2—1009) imposed no such restriction on voluntary dismissals sought prior to trial, the supreme court superimposed its supervisory authority to require that only after the pending dispositive motion is denied may the court entertain and grant the voluntary dismissal, stating:

> "It has become clear that the allowance of an unrestricted right to dismiss and refile an action in the face of a potentially dispositive motion is not only increasing the burden on the already crowded dockets of our courts, but is also infringing on the authority of the judiciary to discharge its duties fairly and expeditiously. Though we decline appellants' invitation to displace the legislative enactment completely by

adopting a version of the Federal rule, we do herein assert our authority to manage the courts." (*Gibellina*, 127 Ill. 2d at 137.)

It should be noted that the supreme court's intervention in *Gibellina* pursuant to its supervisory powers has now been incorporated by our legislature into a new amendment to section 2—1009 which becomes effective on January 1, 1994. Pub. Act 88—157, eff. January 1, 1994.

In further articulating the necessity for this rule, the supreme court in *Gibellina* emphasized the potential for abuse if a plaintiff were allowed to nonsuit his action every time an adverse ruling was imminent, stating:

"[I]t is equally apparent that an ever increasing number of plaintiffs are using a section 2—1009 motion to avoid a potential decision on the 'merits' or to avoid an adverse ruling as opposed to using it to correct a procedural or technical defect." *Gibellina*, 127 Ill. 2d at 137.

As noted, in *Gibellina*, the supreme court felt the need to prevent such abuse before trial pursuant to its managerial authority even though the plaintiff's statutory right to dismiss without prejudice is unrestricted under section 2—1009. This fact makes it all the more compelling to prevent the trial court from exercising its discretion to indulge such abuse after trial commences where in order to check this avenue of abuse, the act itself restricts plaintiff's right to voluntarily dismiss.

However, this is precisely what was accomplished by the unconditional dismissal granted in the present case. After the qualifications of her expert were challenged, plaintiff sought to escape the consequence of an adverse ruling by obtaining a dismissal without prejudice. This is not different from an attempt to avoid a motion for a directed verdict at the close of the evidence after plaintiff is awakened to the fact that his or her case did not establish all the elements necessary to prove up the cause of action.

■■ Plaintiff claims that the promulgation of this court in *Northern Trust Co. v. Upjohn Co.* (1991), 213 Ill. App. 3d 390, 572 N.E.2d 1030, was an unexpected fortuitous event which was not within the control or perceivable horizon of the plaintiff. We disagree. That decision is predicated upon well-established principles requiring that an expert must have requisite knowledge and experience, whether academic or practical, in dealing with the subject matter which is addressed in his opinion testimony. In *Northern Trust*, we applied the traditional rule that to establish deviation

from the pertinent standard of care, the testifying expert " 'must be both a licensed member of the school of medicine about which he opines and [be] familiar with the ordinary methods, procedures, and treatments of the practitioners in the actual or similar community unless certain uniform standards apply regardless of either locality or available conditions or facilities.' " *Northern Trust*, 213 Ill. App. 3d at 406, quoting *Novey v. Kishwaukee Community Health Services Center* (1988), 176 Ill. App. 3d 674, 678, 531 N.E.2d 427.

We did not unqualifiedly assert in *Northern Trust* that it was necessary for a testifying expert in a medical malpractice trial to be certified in the same speciality as the defendant doctor. Rather, we applied the principle that the expert must merely demonstrate sufficient familiarity and experience with the standards and practices about which he is testifying. In *Northern Trust*, the expert whose speciality was emergency medicine was called upon to testify about the standard of care which controls the treatment of an obstetrics patient's reaction to the drug Prostin, administered to induce a second trimester pregnancy interruption. The testifying expert admitted that he had never been involved in a pregnancy interruption procedure, had never administered the drug Prostin, observed the reaction of a patient to that drug, or had any experience whatsoever concerning that drug. We held that the witness did not qualify as an expert, not because he practiced in a different medical specialty but because his testimony pertained to matters outside of his demonstrated knowledge and experience.

Consequently, plaintiff's concern about her expert's qualifications after reading the opinion in *Northern Trust* cannot be attributed to a sudden or abrupt change in the law. The decision in *Northern Trust* does not depart from established principles. For that matter, since the holding in *Northern Trust* did not dogmatically require that the expert practice in the same specialty, it did not necessarily foreclose Dr. Herbert's testimony in this case so long as that expert could demonstrate sufficient knowledge and experience concerning the applicable standards which his testimony addressed. This is particularly true here since the standard addressed does not involve an esoteric area of practice. Rather, it addresses generally the duty of a physician to advise a patient of a collateral condition relatively unrelated to the condition for which his help was sought by the patient.

Thus the risk of an adverse ruling which plaintiff sought to avert by obtaining a voluntary dismissal was neither certain nor attributable to fortuitous events beyond her control or reasonable an-

ticipation. The opportunity to voluntarily dismiss after commencement of trial was not designed to provide an alternative for proper preparation or to escape the impact of an effectively interposed defense.

The case of *Voegele v. Kidd* (1958), 18 Ill. App. 2d 400, 152 N.E.2d 887, upon which plaintiff relies is therefore not in point. There the expert designated by the plaintiff was not available to testify on a given date during the trial although he had been available on the preceding date when the court recessed for the afternoon because of a personal commitment of the judge. The facts further showed that no subpoena was served on the doctor. The court granted a voluntary dismissal upon payment of costs. The appellate court upheld the dismissal on the ground that the trial court properly balanced all countervailing considerations.

In *Voegele,* the doctor's unavailability was in fact fortuitous since he had been available on the preceding date. Moreover, although not served with a subpoena, experienced trial attorneys are aware that it is foolhardy to force one's expert to appear involuntarily. Thus while a subpoena perhaps could have coerced an appearance, the doctor's reluctance to appear was not controllable or attributable to the plaintiff.

■ Here, in this case, the plaintiff's expert did appear and did take the stand. Plaintiff's concern was that she had misinterpreted the law pertaining to her expert's qualifications. It is precisely such concerns which should not be remediable under section 2—1009. That section is not designed to provide a party with two bites at the apple. As pointed out in *Gibellina,* neither fairness to the parties nor effective court administration would warrant granting of such relief. While this was always the case after commencement of trial after the 1932 amendment to section 2—1009, since *Gibellina* it is now also the case even before trial where a dispositive motion is pending.

Accordingly, we find that the trial court abused its discretion under section 2—1009 to permit dismissal without prejudice. However, the question remains as to the proper remedy on appeal.

Defendant asks that we vacate the order dismissing the matter without prejudice and enter a dismissal with prejudice. However, that remedy would be excessive in that plaintiff did not indicate that she would have refused to proceed with the trial even if her motion to dismiss without prejudice were denied. In fact, under those circumstances it is obvious that she would not have substituted certain dismissal on the merits in place of the mere risk of

such dispostion if she had waited for a ruling by the trial court with respect to the objection raised as to her expert's qualification. It is true that if the court would have sustained the objection it probably would have resulted in a motion by defendant for a directed verdict pursuant to Rule 220 (134 Ill. 2d R. 220), which would have foreclosed the last-minute substitution of another expert. However, for the reasons discussed earlier, the facts do not compel the conclusion that the disqualification of her expert would be warranted even if the decision in *Northern Trust* were implemented in every detail.

Consequently, it would be an act of overkill to enter a dismissal with prejudice in place of the order which was entered, since it is by no means certain that such an order would have been forthcoming at trial if the trial court had refused to grant plaintiff's voluntary dismissal without prejudice.

On the other hand, if this matter were remanded without any further action, then the findings that the trial court abused its discretion would not have any impact at all. The dismissal of the trial, even though erroneous, would still stand if nothing else than as an unwarranted declaration of mistrial.

Consequently, what seems to achieve the most equitable result is to mandate that, on remand, the trial be recommenced at the earliest opportunity without granting leave to plaintiff to designate a new expert, as long as Dr. Herbert remains reasonably available. This result would restore as much of the status quo as possible as of the time immediately prior to the erroneous dismissal. *Cf. Cummings v. Simmons*, 167 Ill. App. 3d 544, 521 N.E.2d 634.

Accordingly, pursuant to Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5), this cause is reversed and remanded with instruction to vacate the order of dismissal and to commence retrial without undue delay and to preclude any substitution of experts by the plaintiff so long as Dr. Herbert is reasonably available to the plaintiff as her witness.

Reversed with instructions.

JUSTICE McNULTY, J., specially concurring:

I concur in the majority opinion in this case and in the remedy formulated, as it returns the parties as nearly as possible to the status quo that existed before the trial court erroneously granted plaintiff's motion to dismiss without prejudice. A motion to dismiss with prejudice should be granted only if *Northern Trust Co. v. Upjohn Co.* (1991), 213 Ill. App. 3d 390, 572 N.E.2d 1030, precludes

plaintiff's proferred expert, Dr. Herbert, from testifying about the standard of care due plaintiff from the defendant Dr. Skolnik. I do not believe *Northern Trust* mandates that result. I am also not convinced, as the dissent concludes, that the evidence establishes as a matter of law that Dr. Herbert is incompetent to testify as an expert for the reasons set forth in the majority opinion.

JUSTICE COUSINS, dissenting:

I concur with the first part of the majority's decision that the trial court erred in granting the motion for a voluntary dismissal without prejudice. I agree with the majority that section 2—1009 (Ill. Rev. Stat. 1991, ch. 110, par. 2—1009) is not designed "to provide a party with two bites at the apple." However, I dissent from the second part of the decision to remand and afford the plaintiff a new trial. I dissent because the decision grants the plaintiff "two bites at the apple." Also, although the majority seeks to limit the plaintiff to calling only Dr. Richard Herbert again as a potential expert witness at a new trial if "Dr. Herbert is reasonably available to plaintiff as her witness," this remedy does wrong to the defendant. (254 Ill. App. 3d at 978-79.) I dissent because it is saliently clear in this case that the defendant should not be burdened with the convenience and expense of another trial. Here, substantial and significant trial proceedings were had before the trial was aborted on the motion filed by the plaintiff. The court even granted the plaintiff a continuance to the following day in order for plaintiff to determine if his expert could "meet the standard."

The opinion states:

> "*Northern Trust* did not dogmatically require that the expert practice in the same specialty, it did not necessarily foreclose Dr. Herbert's testimony in this case so long as that expert could demonstrate sufficient knowledge and experience concerning the applicable standards which his testimony addressed. This is particularly true here since the standard addressed does not involve an esoteric area of practice. Rather, it addresses generally the duty of a physician to advise a patient of a collateral condition relatively unrelated to the condition for which his help was sought by the patient." 254 Ill. App. 3d at 977.

I agree with the first part of this statement. However, I disagree with the conclusional part of the statement which states:

"This is particularly true here since the standard addressed does not involve an esoteric area of practice. Rather, it addresses generally the duty of a physician to advise a patient of a collateral condition relatively unrelated to the condition for which his help was sought by the patient." 254 Ill. App. 3d at 977.

The conclusional part of the statement is utterly without foundation. It is an opinion which we, being judges and not doctors, are not qualified to enunciate. There is no evidence which supports the conclusion that it is "the duty of a physician to advise a patient of a collateral condition relatively unrelated to the condition for which his help was sought by the patient." 254 Ill. App. 3d at 977.

The opinion also posits that "[i]n fact, under those circumstances it is obvious that she would not have substituted certain dismissal on the merits in place of the mere risk of such disposition if she had waited for a ruling by the trial court with respect to the objection raised as to her expert's qualification." (254 Ill. App. 3d at 978-79.) This assertion is not based on any facts and should not be a consideration in any way in this appeal. Perforce, I dissent.

A witness may testify as an expert in a particular area outside of his or her specialty if the witness has sufficient training and experience to give an opinion as to the standard of care. (See *Northern Trust Co. v. Upjohn Co.* (1991), 213 Ill. App. 3d 390, 572 N.E.2d 1030.) Even so, a witness may not testify out of the blue. There must be a predicate for the expert testimony. First, it must be shown that the expert is licensed in the same "school of medicine" to which the defendant-doctor belongs. Secondly, the expert must demonstrate that he is otherwise qualified to give expert testimony in the case. (*Northern Trust Co.*, 213 Ill. App. 3d at 406.) The record in this case indicates that no predicate existed for Dr. Herbert to testify regarding the standard of care required of the defendant. (See *Thomas v. University of Chicago Lying-In Hospital* (1991), 221 Ill. App. 3d 919, 583 N.E.2d 73.) The trial court erred in refusing to grant defendant's request for a dismissal with prejudice. (See *Thomas*, 221 Ill. App. 3d 919.) The majority decision now compounds the error in that it circumvents the intent and purpose of section 2—1009. See *Gibellina v. Handley* (1989), 127 Ill. 2d 122, 136-37, 535 N.E.2d 858.

My dissent in this case does not conclude that *Northern Trust* mandates that plaintiff's expert, Dr. Herbert, be precluded from testifying because "Dr. Herbert was not licensed in the same school of medicine to which the defendant doctor belongs." My dissent does indicate that the evidence establishes that Dr. Herbert "is in-

competent to testify as an expert." The trial court proceedings had in this case clearly indicated his incompetency to testify because he did not fulfill the second requirement of the *Northern Trust* case. The testimony established that Dr. Herbert was unable to "demonstrate that he is otherwise qualified to give expert testimony."

To support a decision to remand this case for further proceedings, the majority opinion cites the case of *Cummings v. Simmons* (1988), 167 Ill. App. 3d 544, 521 N.E.2d 634. However, *Cummings* is inapposite. There, only jury selection proceedings were conducted. Here, the jury was selected, the defendant disclosed his defense in opening statement, and testimony, particularly the testimony of Dr. Herbert, was heard. Further, the reason why the appellate court denied the defendants' prayer for directed verdict in *Cummings* was because none of the defendants had filed a motion for directed verdict in the trial court. In this case, defendant opposed plaintiff's motion for voluntary dismissal without prejudice and requested the trial court to dismiss the case with prejudice. Rather than grant the relief to which the appellant is entitled in this appeal, the majority has constructed a disposition that neither the appellant nor the appellee has requested.

Courts have inherent power to formulate remedies to prevent injustice. (See *Department of Public Works & Buildings v. Vogt* (1988), 51 Ill. App. 3d 770, 779, 366 N.E.2d 310.) However, even resort to this doctrine would be improper in this case.

Here, justice will be ill-served by remand for a new trial on any theory. See *Thomas*, 221 Ill. App. 3d 919, 583 N.E.2d 73.

The proper disposition of this appeal pursuant to Supreme Court Rule 366(a)(5) is to reverse and remand with instructions to vacate the order of voluntary dismissal without prejudice and enter an order granting defendant's motion for dismissal with prejudice. Accordingly, I respectfully dissent.