*In re* MARRIAGE OF MARY ANN YELTON, Petitioner-Appellant, and DAVID HOLTZMAN, Respondent-Appellee.

First District (3rd Division)   No. 1—95—1109

Opinion filed January 22, 1997.

Kaufman, Litwin & Feinstein, of Chicago (Paul L. Feinstein, of counsel), for appellant.

Robbins, Salomon & Patt, Ltd., of Chicago (Richard Lee Stavins and Howard S. Golden, of counsel), for appellee.

JUSTICE LEAVITT delivered the opinion of the court:

The petitioner, Mary Ann Yelton, obtained a divorce from the respondent, David Holtzman, after 12 years of marriage. At the time the trial judge entered the order of dissolution, he was unaware that David had Alzheimer's disease. As a result, he distributed the marital assets in accordance with a stipulated "marital settlement agreement" (the Agreement) entered into by the parties. Subsequently, a guardian was appointed for David. Pursuant to the guardian's petition pursuant to section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1994)), a different judge declared the Agreement void. The judge then held a trial, after which he redistributed the couple's property. Mary Ann now appeals from the judgment redistributing the property.

The relevant facts are as follows. In April 1991, a neurologist informed Mary Ann, David, and Susan Holtzman, David's daughter from a previous marriage, that David was in the beginning stages of Alzheimer's dementia. In May 1991, a psychiatrist confirmed that David suffered from Alzheimer's disease and depression. Shortly after receiving the diagnosis, Mary Ann retained an attorney to draft the Agreement, which Mary Ann and David signed on June 27, 1991. Mary Ann did not inform the attorney that David had Alzheimer's disease.

The Agreement provided that Mary Ann would retain a home located in La Grange, Illinois, as well as all household accessories and a 1984 Buick station wagon. She received two checking accounts containing $6,000; three certificates of deposit with a total value of $168,970.83; and individual retirement accounts valued at $13,000. The Agreement also awarded her all of the common stock in two companies she operated: Carrier Audit, Inc. and Accu-Rate Traffic, Inc. These entities earned combined profits of $36,995 in 1990. The Agreement provided that David retain furniture from a Chicago residence; a 1989 Buick Regal; and the proprietorship of Morgan Metal, a company that he operated, but which was no longer profitable. Both parties waived maintenance.

On July 16, 1991, Mary Ann filed for a divorce pursuant to the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1991, ch. 40, par. 101 et seq. (now 750 ILCS 5/101 et seq. (West 1994))). On July 31, 1991, the judge entered an order of dissolution on the ground of irreconcilable differences pursuant to section 401(a)(2) of the Act. 750 ILCS 5/401(a)(2) (West 1994). Mary Ann was the only witness to testify at the hearing on the petition. Neither David nor counsel representing his interests attended the hearing. Rather, Mary Ann's attorney presented a stipulation signed by both parties

stating that the case was uncontested. The judge also relied on Mary Ann's testimony that she and David had been living apart for two years and that the marriage was irretrievably broken. The order of dissolution incorporated the Agreement and its distribution of marital assets. David and Mary Ann did not advise family members of their divorce until November 1991.

On August 18, 1992, a probate judge appointed Susan Holtzman (the Guardian) as David's legal guardian. Subsequently, the Guardian learned of the circumstances surrounding the divorce. On September 22, 1992, she filed a section 2—1401 petition seeking to vacate the judgment incorporating the Agreement.

On November 16, 1993, after a hearing, the judge granted the petition and declared the Agreement void. The judge found that Mary Ann's testimony at the dissolution hearing had been misleading and that she intentionally omitted important information. Her testimony that the parties were separated longer than two years gave the impression David was living independently and was capable of properly managing his affairs. The judge indicated that Mary Ann had misled the court about David's financial and physical condition. Additionally, Mary Ann's testimony that the marriage was irretrievably broken was misleading because the parties maintained a relationship and subsequent to the separation, David was living in Mary Ann's residence on a full-time basis.

Furthermore, the judge found misleading Mary Ann's statements that David had signed the Agreement freely and voluntarily. The court found that when David signed the Agreement, he lacked the capacity to understand the consequences of the property division and waiver of maintenance. The judge noted that Mary Ann had a fiduciary relationship to David. David trusted her and was dependent on her at the time they signed the Agreement. Mary Ann initiated the Agreement, and the judge found that she exerted undue influence in obtaining David's signature. The judge concluded that the secrecy of the divorce proceeding was the result of Mary Ann's planning and was to her benefit.

The judge also entered findings regarding the Agreement's distribution of marital assets. He concluded that two savings accounts Mary Ann had listed as nonmarital assets were, in fact, marital assets. He also found that there had been a commingling of assets with funds being transferred from David to Mary Ann and vice versa. Given David's illness, the judge determined that Mary Ann had greater income prospects than David when they executed the Agreement. David's business had little or no value, and he was in the process of liquidating it when he signed the Agreement. He had no

income except for social security and a small monthly annuity payment. Furthermore, the fact that the Agreement awarded Mary Ann most of the marital assets, combined with David's waiver of maintenance, exacerbated David's financial disadvantage.

Based on these findings, the judge concluded that the judge presiding at the initial dissolution hearing had been unaware of the "true facts." The judge also found that the Guardian's petition to vacate the Agreement was necessitated by Mary Ann's wrongful conduct. Therefore, he ruled that the Agreement was unconscionable and vacated it. He did not, however, vacate the order of dissolution because he believed that at the time of the dissolution proceeding, David was capable of understanding the nonfinancial nature of the divorce.

The judge scheduled a new hearing to determine the redistribution of marital property. The Guardian filed a response to Mary Ann's original petition for dissolution and added a claim for maintenance. Mary Ann did not file a reply. Extensive discovery followed. On July 18, 1994, trial commenced. Mary Ann attempted to establish that David had dissipated the marital estate. She presented witnesses who testified that David had a history of gambling losses and that he overbilled customers to cover those losses. Mary Ann contended that David's assets would have been more than $200,000 had he not incurred these gambling losses and greater by an unidentified amount if he had not overbilled his company's two primary customers in 1991.

On August 30, 1994, the judge ruled that the irretrievable breakdown of the marriage occurred between January 1, 1990, and January 30, 1991, and that David had not dissipated marital assets. The judge found that David contributed $545,000 in earnings during the marriage while Mary Ann contributed $246,000. The judge did note that Mary Ann's contribution as a homemaker was far greater than David's. Mary Ann owned a home valued at $155,000 and had an annual income between $30,000 and $35,000. The judge also found that Mary Ann had spent $162,790 deposited into two separate bank accounts. Mary Ann was in possession of these accounts as David's fiduciary. Of the $162,670, the judge found that Mary Ann improperly spent $85,447, which she was obligated to reimburse to the marital estate. The judge then distributed the marital assets as follows:

1. The Guardian received 100 shares of Waste Management, Inc., stock and 80 shares of Wallace Computer stock previously held in joint tenancy by Mary Ann and David;

2. The Guardian was awarded David's bank account proceeds in the amount of $15,859, along with his annuity paying $95.85 monthly and his life insurance policy proceeds of $6,600;

3. Mary Ann was awarded her bank account totalling $100, as well as a 1984 Buick;

4. A judgment was entered in favor of the Guardian in the amount of $46,955, which was David's share of the $85,447 Mary Ann owed the estate, and Mary Ann was awarded the remaining $38,492;

5. Mary Ann was ordered to pay to the Guardian $250 per month in maintenance.

On May 9, 1995, the judge ordered Mary Ann to reimburse $47,928.43 to the Guardian for attorney fees and costs incurred litigating the proceedings. The court found that Mary Ann had made misleading statements in her petition for dissolution of marriage and in the Agreement, and, as a result, the payment of the Guardian's fees and costs was an appropriate sanction under Supreme Court Rule 137. 134 Ill. 2d R. 137.

■ Mary Ann first contends that the trial judge erred in refusing to vacate the original judgment of dissolution. She argues that because the judge found that her testimony at the 1991 dissolution hearing that she and David had lived apart for the statutorily required two years was misleading, the evidence did not establish sufficient grounds under the Act upon which to grant a dissolution. Relying on the decision in *In re Marriage of Robinson*, 225 Ill. App. 3d 1037, 588 N.E.2d 1243 (1992), Mary Ann contends that the court lacked subject matter jurisdiction to enter the order of dissolution and the judgment is void. Although Mary Ann never moved to vacate the dissolution on this ground during the original dissolution proceedings, a judgment entered by a court that lacks subject matter jurisdiction "may be attacked at any time or in any proceedings." *In re Marriage of Jerome*, 255 Ill. App. 3d 374, 388, 625 N.E.2d 1195 (1994).

The issue of whether irregularities in a dissolution proceeding deprive the trial court of jurisdiction over the matter and render orders entered in the case void has divided Illinois courts. In *In re Marriage of Robinson*, the parties sought a dissolution on the grounds of irreconcilable differences. Then, as now, the Act required that in order to proceed on this ground, the parties must have lived apart for two years. However, if they had lived apart for at least six months but less than two years, they could file a written waiver of the two-year waiting period. See Ill. Rev. Stat. 1989, ch. 40, par. 401(a)(2) (now 750 ILCS 5/401(a)(2) (West 1994)). The Robinsons failed to execute the waiver and file it with the court; however, they stipulated to the waiver and neither party objected to the absence of the waiver in the record until appeal. The appellate court vacated the judgment and held that proceedings brought under the Act are not within the

general jurisdiction conferred upon circuit courts by the Illinois Constitution. Rather, a court may only act within the limited jurisdiction conferred by the Act, the provisions of which must be strictly construed. *In re Marriage of Robinson*, 225 Ill. App. 3d at 1038. Because the Act required the filing of a written waiver, and the record did not contain one, the trial court lacked subject matter jurisdiction to enter the order of dissolution. Therefore, the dissolution was void. *Robinson*, 225 Ill. App. 3d at 1038.

The reasoning of *In re Marriage of Robinson* has been soundly rejected. The court in *In re Marriage of Jerome* recognized that

> "jurisdiction of the subject matter does not mean simply jurisdiction of the particular case before the court but jurisdiction of the class of cases to which the particular case before the court belongs. [Citations.] Where the subject matter of the litigation is within the general jurisdiction of the trial court, the claim of want of jurisdiction by reason of irregularities, or exceptional or special circumstances, or because the court had no jurisdiction to render the particular judgment or order cannot be made for the first time on appeal." *In re Marriage of Jerome*, 255 Ill. App. 3d at 388.

Contrary to the holding in *In re Marriage of Robinson*, under the Illinois Constitution, dissolution proceedings are within the general jurisdiction of the circuit courts. *In re Marriage of Monken*, 255 Ill. App. 3d 1044, 1046, 627 N.E.2d 759 (1994); *English v. English*, 72 Ill. App. 3d 736, 741, 393 N.E.2d 18 (1979). Thus, as in *In re Marriage of Jerome*, Mary Ann's contentions here concern only the circuit court's jurisdiction over this particular matter. Because the parties adjudicated their rights before the court to a final judgment without objection to the court's right to hear the cause, the parties will be bound on appeal so far as the question of jurisdiction over the particular case is concerned. *In re Marriage of Jerome*, 255 Ill. App. 3d at 388.

■ Additionally, as the court in *In re Marriage of Monken* noted, "one who accepts the benefits of a divorce decree [is] estopped from subsequently challenging the validity of the decree even if the challenge is [based upon] the lack of subject matter jurisdiction." *In re Marriage of Monken*, 255 Ill. App. 3d at 1047.

■ Here, the judge entered a final order of dissolution on July 31, 1991. The dissolution permitted Mary Ann to avoid legal responsibility for David's ongoing medical expenses from Alzheimer's disease. Mary Ann benefited from the dissolution of marriage. Mary Ann did not object to jurisdiction during the trial; did not file a post-trial motion within 30 days of entry of the order of dissolution seeking to

vacate the judgment due to lack of jurisdiction; and did not appeal the decree. In fact, she failed to raise the jurisdictional issue until November 24, 1993, after the decision granting the Guardian's section 2—1401 petition. We hold that Mary Ann was, at that time and now, estopped from raising the issue of the court's subject matter jurisdiction to enter the original order of dissolution.

■ Mary Ann next contends that the trial judge erred in denying a motion for voluntary dismissal, which she filed after the judge denied her motion to vacate the order of dissolution. Mary Ann claims that because she complied with section 2—1009 of the Code (735 ILCS 5/2—1009 (West 1994)), she is entitled to the dismissal as a matter of law.

In *Gibellina v. Handley*, 127 Ill. 2d 122, 137, 535 N.E.2d 858 (1989), our supreme court sought to curb abuse of the voluntary dismissal statute, which increasing numbers of plaintiffs were using to avoid adverse rulings. The legislature incorporated the decision in *Gibellina* into an amendment to section 2—1009. This version of the statute was in effect when Mary Ann filed her motion on November 23, 1993. See *Gibrick v. Skolnik*, 254 Ill. App. 3d 970, 976, 627 N.E.2d 76 (1993). Section 2—1009(a) states:

> "The plaintiff may, *at any time before trial or hearing begins*, upon notice to each party who has appeared or each party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause." (Emphasis added.) 735 ILCS 5/2—1009(a) (West 1994).

The plain language of the statute indicates that the trial judge must grant a voluntary dismissal only if it is presented before the trial commences. After a trial or a hearing begins, the decision to grant the motion is within the judge's discretion. 735 ILCS 5/2—1009(c) (West 1994).

The trial on Mary Ann's petition for dissolution of marriage commenced on July 31, 1991. Mary Ann did not file a motion under section 2—1009(a) before that date. She also did not do so prior to the date the hearing began on the Guardian's petition to vacate the Agreement. In fact, Mary Ann waited to present the motion for voluntary dismissal until November 23, 1993, when she realized that her original plan to manipulate the dissolution proceedings had gone awry. Although Mary Ann did file the motion before the hearing to determine the redistribution of marital property, we do not believe that section 2—1009(a) contemplates automatic voluntary dismissal under these circumstances. In fact, to so interpret section 2—1009(a) would thwart the legislative intent to curb the precise abuse Mary

Ann has attempted: to avoid an adverse ruling in a proceeding already begun. The trial having begun long before Mary Ann filed her motion for voluntary dismissal, Mary Ann was not entitled to the dismissal under section 2—1009(a).

For all the foregoing reasons, we affirm the judgment of the circuit court. The order staying the judgment is vacated.

Affirmed.

ZWICK, P.J., and McNAMARA, J., concur.